**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

v.

ALBERT CHARLES BURGESS, JR.,
                    *Defendant-Appellant.*          No. 09-4584

VICKY, CHILD PORNOGRAPHY
VICTIM,

                    *Amicus Curiae.*

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(1:09-cr-00017-LHT-DLH-1)

Argued: March 23, 2012

Decided: July 11, 2012

Before GREGORY, KEENAN, and WYNN, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published
opinion. Judge Keenan wrote the opinion, in which Judge
Wynn joined. Judge Gregory wrote a separate opinion concur-
ring in part, dissenting in part, and concurring in the judg-
ment.

**COUNSEL**

**ARGUED:** James Stephens Weidner, Jr., JAMES S. WEIDNER, JR. ATTORNEY, Charlotte, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. Paul George Cassell, UNIVERSITY OF UTAH COLLEGE OF LAW, Salt Lake City, Utah, for Amicus Curiae. **ON BRIEF:** Lisa S. Costner, LISA S. COSTNER, P.A., Winston-Salem, North Carolina, for Appellant. Anne M. Tompkins, United States Attorney, Charlotte, North Carolina, for Appellee. James R. Marsh, MARSH LAW FIRM PLLC, White Plains, New York; Carol L. Hepburn, CAROL L. HEPBURN PS, Seattle, Washington, for Amicus Curiae.

---

**OPINION**

BARBARA MILANO KEENAN, Circuit Judge:

A jury convicted Albert C. Burgess, Jr., of two felonies involving the receipt and possession of materials depicting minors engaged in sexually explicit conduct. The district court sentenced Burgess to a term of 292 months' imprisonment, and to supervised release for life. The district court also ordered that Burgess pay, among other things, restitution of $305,219.86 under the Mandatory Restitution for Sexual Exploitation of Children Act, 18 U.S.C. § 2259 (the restitution statute), for losses suffered by "Vicky," a child victim portrayed in pornographic material in Burgess' possession.

Burgess challenges both his convictions and sentences on appeal. We affirm his convictions and all aspects of his sentences, except the district court's award of restitution to the victim. Because the district court did not make specific findings regarding the elements of restitution, we vacate the restitution award and remand the case to the district court for a calculation of the loss Burgess proximately caused the victim.

## I.

Burgess was identified as a consumer of child pornography during an investigation by Immigration and Customs Enforcement (ICE) into websites that offered such content to paying customers. Federal authorities linked Burgess to an offending website using payment information that he had supplied. ICE agents later obtained a search warrant for Burgess' residence in Hendersonville, North Carolina.

The ICE agents executed the search warrant on March 6, 2008. The search was a joint effort of ICE, the United States Postal Inspection Service (U.S.P.I.S), the North Carolina State Bureau of Investigation, and the Henderson County Sheriff's Department. In their search for evidence related to the exploitation of children by use of the internet, the authorities located a personal computer and 327 compact discs. Later forensic analysis determined that the 327 compact discs contained a total of 784 video recordings and 4,614 images of child pornography. Burgess' personal computer contained an additional seven video recordings and 121 images of child pornography.

Although Burgess was not present during the search, the Sheriff's Department located his automobile while the warrant was being executed and initiated a "traffic stop." Detective Patricia Redden, of the Henderson County Sheriff's Department, and Inspector Lisa Holman, of the U.S.P.I.S, then interviewed Burgess, who agreed to waive his *Miranda* rights. Although Burgess refused to answer questions regarding his internet activity, he admitted that he was the only user of the personal computer located in his residence.

At the same time the interview was taking place, the federal agents continued the search of Burgess' residence, and informed Redden that they had located child pornography on Burgess' electronic data storage devices. At that time, Redden told Burgess that he would be charged with third-degree sex-

ual exploitation of a minor under North Carolina law. Redden transported Burgess to the state magistrate's office, obtained an arrest warrant, and escorted Burgess to the Henderson County jail.

While Burgess was awaiting admission to the jail, Redden asked him if he wished to continue speaking with her. She informed him again of his *Miranda* rights and told him that he could stop answering questions at any time. Burgess, looking down at a copy of the arrest warrant, stated, "You've got me." He admitted to viewing child pornography between two and three times per week, and also informed Redden that he knew of significant child pornography trafficking operations in Russia and the Philippine Islands (the Philippines).

On March 7, 2008, while released on bond, Burgess placed a telephone call to Redden stating, "Well, I've got to help myself. I've got to talk to somebody." He agreed to speak with ICE Agent Patrick Wilhelm and Inspector Holman. Burgess met with the federal agents at his home three days later, signed a statement waiving his *Miranda* rights, and provided details regarding his pornography sources in Russia and the Philippines. It was Burgess' understanding that the federal authorities would use the information and email addresses he had provided to assist in the investigation of these internet pornography sources. Burgess was under the impression that he was bargaining with the federal agents, and later testified to this effect, stating: "You know, you've got to give [the government] something before they can give you something. You can't sit there, you know, and extract something from them." Burgess also confessed to the federal agents that he viewed child pornography for five hours per day while masturbating, and that he did so to prevent himself from actually committing offenses on a child.

Burgess was required to appear in state court on March 28, 2008. He failed to appear, and was arrested by the United States Marshal's Service in Virginia on June 10, 2008. Bur-

gess' bond was revoked and, during the time he remained in state custody, a federal grand jury returned a two-count indictment against him on March 17, 2009. The following day, a federal warrant was issued for his arrest.

On March 23, 2009, the government filed an application for a writ of habeas corpus, seeking Burgess' transfer from state custody to federal court for an initial appearance on his federal charges. Burgess made his initial appearance on April 14, 2009, and he was remanded for the first time to federal custody.[1]

Burgess was indicted for (1) knowingly possessing visual materials depicting a minor engaging in sexually explicit conduct, which were shipped in interstate commerce via computer, in violation of 18 U.S.C. § 2252(a)(4)(B); and (2) knowingly receiving visual materials depicting a minor engaging in sexually explicit conduct, which were shipped in interstate commerce via computer, in violation of 18 U.S.C. § 2252(a)(2). He was tried before a jury in November 2009, and was convicted on both counts.

The presentence report calculated a guideline range of imprisonment of between 292 and 365 months. Burgess, who was proceeding pro se at his sentencing, made a number of objections to the presentence report. Pertinent to this appeal, Burgess objected to a four-level sentencing enhancement, pursuant to U.S.S.G. § 2G2.2(b)(4), for possession of images portraying sadistic and masochistic conduct in the sexual exploitation of children. He also objected to a five-level sentencing enhancement, pursuant to U.S.S.G. § 2G2.2(b)(5), for engaging in a pattern of activity involving the sexual abuse or

---

[1]During the time he was held in state custody on charges of third-degree sexual exploitation of a minor, Burgess also was being held in connection with his failure to appear in state court on March 28, 2008, and for failing to comply with sex offender registration requirements, as mandated by North Carolina law. The status of these charges is not disclosed in the record.

exploitation of a minor. After considering Burgess' objec-
tions, the district court adopted the findings of the presentence
report. The district court imposed a sentence of 240 months'
imprisonment with respect to Count 1, and a sentence of 292
months' imprisonment with respect to Count 2, to be served
concurrently.

Pursuant to the restitution statute, the government submit-
ted a request for restitution on behalf of Vicky,[2] a victim of
child sexual exploitation portrayed in the materials seized
from Burgess' residence. Noting that 18 U.S.C. § 2259 man-
dated an award of restitution, the district court ordered that
Burgess compensate Vicky in accordance with the govern-
ment's request, in the total amount of $305,219.86.

## II.

Burgess raises two challenges to his pretrial detention.
First, he asserts that the federal government violated the
Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.*, by failing to
indict him within 30 days of his being taken into custody.
Second, Burgess argues that his Sixth Amendment right to a
speedy trial was violated, because he was indicted on federal
charges more than a year after federal authorities executed a
search warrant at his residence and state authorities first took
him into custody. Upon our review, we find no merit in either
argument.

## A.

The Speedy Trial Act provides, in relevant part:

> Any information or indictment charging an individ-
> ual with the commission of an offense shall be filed
> within thirty days from the date on which such indi-

---

[2]"Vicky" is a pseudonym that this victim has used throughout this litiga-
tion and other prior criminal proceedings.

vidual was arrested or served with a summons *in connection with such charges.*

18 U.S.C. § 3161(b) (emphasis added). We review the district court's interpretation of the Speedy Trial Act de novo, and any related factual findings for clear error. *United States v. Rodriguez-Amaya*, 521 F.3d 437, 440 (4th Cir. 2008).

Burgess was indicted on the present charges on March 17, 2009. Thus, the Speedy Trial Act would have been implicated if Burgess had been arrested or served with a summons in connection with the present charges more than 30 days prior to March 17, 2009. *See* 18 U.S.C. § 3161(b). However, Burgess was not transferred from state custody to federal custody until March 24, 2009, a week *after* the federal authorities obtained an indictment.

Burgess contends, nevertheless, that his rights under the Speedy Trial Act were activated far in advance of his transfer to federal custody. He asserts that the involvement of the federal authorities during the investigation that led to his initial arrest, and the engagement of the United States Marshal's office following his failure to appear in state court, demonstrate the "continual involvement" of federal authorities in Burgess' arrest and prosecution sufficient to activate his rights under the Speedy Trial Act. We disagree with Burgess' arguments.

The 30-day time limit is activated under the Speedy Trial Act when a person's liberty is restrained for the purpose of answering to a federal charge. *United States v. Woolfolk*, 399 F.3d 590, 595-96 (4th Cir. 2005) (citing *United States v. Iaquinta*, 674 F.2d 260, 267 (4th Cir. 1982)); *see also United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995) (holding that the Speedy Trial Act only applies to a federal arrest on a federal charge). In the present case, the investigation performed by the federal authorities did not restrain Burgess' liberty. That investigation initially led to a state arrest on state

charges, and those state charges resulted in his restraint. Similarly, the actions of the United States Marshal's office were taken in response to Burgess' failure to appear in state court on state charges, and to his flight across state lines into Virginia. Therefore, neither of those actions by federal authorities activated the provisions of the Speedy Trial Act.

B.

Burgess separately asserts that his Sixth Amendment right to a speedy trial was violated. However, he fails to provide any analysis supporting this assertion. We review the district court's legal conclusions on this issue de novo, and its factual findings for clear error. *Woolfolk*, 399 F.3d at 594, 597-98.

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. To establish a violation of this constitutional guarantee, a defendant first must show that the Amendment's protections have been activated by an "arrest, indictment, or other official accusation." *Woolfolk*, 399 F.3d at 597 (citing *Thomas*, 55 F.3d at 148).

When the Sixth Amendment's protections have been activated by a qualifying event, we engage in the four-factor balancing test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), and consider (1) whether the delay before trial was uncommonly long, (2) whether the government or the criminal defendant is more to blame for that delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice from the delay. *See United States v. Shealey*, 641 F.3d 627, 634 (4th Cir. 2011). The duration of the delay, in addition to being a factor in this test, also is a threshold requirement because the defendant must establish that the length of the delay is at least presumptively prejudicial. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992).

The Supreme Court has observed that "postaccusation delay [is] presumptively prejudicial at least as it approaches one year." *Id.* at 652 n.1. We have concluded that a postaccusation delay as short as eight months may qualify as presumptively prejudicial in cases of limited complexity. *Woolfolk*, 399 F.3d at 598.

Burgess, however, does not challenge as "postaccusation delay" the period between his federal indictment and trial. Rather, the delay about which he complains spans the period from the execution of the search warrant on his residence on March 6, 2008, until he was served with the federal charges on April 13, 2009.

Burgess' argument is unavailing, because a Sixth Amendment claim based on federal charges is calculated beginning when a defendant is confronted with an "arrest, indictment, or other official accusation" related to those charges. *Id.* at 597 (citing *Thomas*, 55 F.3d at 148). For purposes of a Sixth Amendment claim, the execution of a federal search warrant does not qualify as a federal "accusation."[3] *See id.* at 597-98 (noting that the only potential federal actions that could activate defendant's speedy trial rights under the Sixth Amendment after being held in state custody are the serving of the detainer, or the issuance of the federal arrest warrant, complaint, or indictment). Accordingly, because Burgess was indicted before his arrest on the present charges, his allegations regarding the time he spent in state custody do not qualify as "postaccusation delay" with respect to the federal charges at issue here.

---

[3]We also note that the prejudice alleged by Burgess, that he was incarcerated prior to his receipt of his federal indictment, was the result of his own failure to appear in state court on pending state charges. Burgess was originally free on bond, and the revocation of his bond was directly related to his flight to Virginia.

### III.

Burgess next argues that the district court erred in failing to suppress certain statements he made to law enforcement officers in March 2008. He asserts that he provided those statements with the understanding that they were protected by "informal use immunity" or "transactional immunity" because, according to Burgess, the custom and practice in the Western District of North Carolina is to grant such immunity to cooperating defendants.

When reviewing the district court's denial of a motion to suppress, we review factual findings for clear error, and issues of law de novo. *United States v. Holmes*, 670 F.3d 586, 591 (4th Cir. 2012). We conclude that the district court did not err in denying Burgess' motion to suppress.

A defendant's alleged agreement to cooperate with law enforcement authorities in exchange for transactional immunity is governed by traditional principles of contract law, and therefore an agreement of this nature may be express or implied. *United States v. McHan*, 101 F.3d 1027, 1034 (4th Cir. 1996). Irrespective whether the alleged agreement is express or implied, the defendant must establish that a meeting of the minds occurred such that the government agreed to refrain from prosecuting the defendant in return for his cooperation. *Id.* (holding that the same standard applies with respect to equitable immunity).

In this case, Burgess can identify no action or statement on the part of the government sufficient to establish a meeting of the minds regarding immunity for his statements. Burgess was informed of his *Miranda* rights before every exchange with the authorities, and at no time did a law enforcement agent make any statement or representation concerning immunity. Additionally, the agents' conduct cannot be viewed objectively as impliedly offering immunity to Burgess or as accepting such an offer from him. Indeed, Burgess' own testimony

at trial demonstrated his mistaken belief that, despite repeated *Miranda* warnings, he expected to receive a benefit from providing information to the authorities. Such a mistaken belief, however, cannot serve as the foundation for an immunity claim. Thus, we conclude that Burgess' argument is wholly unsupported by the record before us, and that the district court did not err in denying his motion to suppress.

IV.

Burgess also contends that the district court erred in responding to a question submitted by the jury during its deliberations. We review the form and content of the district court's response to the jury's question for abuse of discretion. *United States v. Foster*, 507 F.3d 233, 244 (4th Cir. 2007).

During its deliberations, the jury asked the district court to clarify whether Burgess had "to actually know [that the image he was charged with unlawfully receiving] crossed state lines" and whether he had to have "participate[d] in the action to be breaking the law" with respect to the receipt count. Given the compound nature of the question, the district court brought the jury into the courtroom and asked whether "the action" stated in the second part of the question referred to interstate transportation. The members of the jury provided an affirmative response.

In response to the jury's inquiry, the district court replied that "[Burgess] [did] not have to actually know the image crossed state lines," and that "[Burgess] [did] not have to [have] participate[d] in the crossing of state lines." Burgess objected to the response provided by the court. He argued that "the action" in the second part of the question could refer to the receipt of the image. Therefore, Burgess asserted, the district court's clarification could have been interpreted as relieving the government of its burden to demonstrate that he did not receive the image unaware of any pornographic content. In support of this argument on appeal, Burgess contends that

one of the jurors approached defense counsel shortly after the verdict was announced, and stated that the "action" to which the jurors were referring was not limited to the transportation of images in interstate commerce, but more generally referred to the requirement that the defendant take affirmative steps to receive images, knowing them to be pornographic.

In answering a jury's question, a district court is charged with the responsibility of responding to the apparent source of confusion accurately, without creating prejudice. *Foster*, 507 F.3d at 244. An erroneous response by the district court will require reversal "only if it is prejudicial in the context of the record as a whole." *Id.*

We find no merit in Burgess' argument. First, any information potentially provided by a juror in this case is barred from consideration by Rule 606(b)(1) of the Federal Rules of Evidence.[4] None of the exceptions listed in Rule 606(b)(2) is applicable here. Second, the district court employed reasonable measures to understand the questions posed by the jury, and responded in a direct and limited fashion. The district court sought clarification of the questions, provided a response, and received confirmation from the foreman that the questions had, in fact, been answered. Thus, the district court's interpretation of the jury's questions was reasonable, and the court's response accurately stated the relevant law. Accordingly, we conclude that the district court responded to the jury's apparent source of confusion accurately and without creating any prejudice. *See Foster*, 507 F.3d at 244.

---

[4]Rule 606(b)(1) provides: "Prohibited Testimony or Other Evidence. During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters."

## V.

Burgess next raises two challenges related to sentencing enhancements imposed by the district court. First, he argues that the evidence was insufficient to support a finding that his offenses involved material that portrayed sadistic and masochistic conduct. Second, he contends that the evidence used to establish a pattern of activity involving the sexual abuse or exploitation of a minor was too remote in time to support this sentencing enhancement.

In assessing a district court's application of the Sentencing Guidelines, we review its factual findings for clear error, and the court's legal conclusions de novo. *United States v. Hampton*, 628 F.3d 654, 659 (4th Cir. 2010). We conclude that the district court did not err in imposing the two sentencing enhancements.

## A.

The first sentencing enhancement at issue provides that "[i]f the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, increase by 4 levels." U.S.S.G. § 2G2.2(b)(4). Burgess objected to the imposition of this enhancement, arguing that the images of torture depicted on the material in his possession could have been simulated by a computer. He contends on appeal that the district court did not make any findings regarding which images qualified for the enhancement, and failed to rule on his objection.

During trial, the government introduced a video recording in Burgess' possession of a five-year-old child engaged in vaginal intercourse with an adult male. The victim's identity and age were verified by her birth certificate and the testimony of the agent who arrested the producer of the video recording. Given that the vaginal penetration of a five-year-old girl by an aroused adult male would necessarily cause

physical pain to the victim, *see United States v. Rearden*, 349 F.3d 608, 615-16 (9th Cir. 2003) (collecting cases), we conclude, as did the district court, that Burgess' possession of this video recording qualified for a sentencing enhancement under U.S.S.G. § 2G2.2(b)(4).

B.

Burgess also challenges the imposition of a five-level enhancement based on a pattern of activity involving the sexual abuse or exploitation of a minor, as provided in U.S.S.G. § 2G2.2(b)(5). While Burgess correctly observes that several of the most recent incidents identified in the presentence report reflected offenses that were reversed on appeal, the district court did not consider those charges in imposing this enhancement.

Of the offenses considered by the district court, the most recent occurred in 1985. Because of this remoteness in time, Burgess contends that the government failed to establish a pattern of activity involving the sexual abuse or exploitation of a minor.

We conclude that Burgess' argument is without merit. In addition to his multiple convictions for committing or attempting to commit lewd acts upon a child under 14 years of age, Burgess admitted to molesting between 40 and 50 minor male children. Thus, it is clear that the district court did not err in imposing this sentencing enhancement.[5]

---

[5]Burgess also raises a challenge to the reasonableness of his sentence, arguing that the district court failed to account adequately for the nature and circumstances of his offenses and his history and personal characteristics, as required by 18 U.S.C. § 3553. Burgess' argument is without merit. The record amply demonstrates that the district court provided a sufficient, particularized explanation of its reasoning when sentencing Burgess at the lower end of the guidelines range.

In addition, Burgess filed a pro se brief, as well as a number of "addenda," raising several other issues. We have reviewed his contentions and have determined that they are similarly meritless.

## VI.

Burgess also contends that the district court erred in ordering that he pay restitution to Vicky under the restitution statute, because the court did not determine that his conduct proximately caused harm to the victim. On appeal, the government agrees that the district court erred by awarding restitution in the amount requested by the prosecution, and asks that the case be remanded for a determination of the loss to the victim proximately caused by Burgess. Vicky, who participated in this case as amicus curiae with leave of this Court, contends that the award should stand, and that the restitution statute at issue is not limited by a proximate causation requirement.

In resolving this issue, we first observe that the purpose of the restitution statute is to "direct the defendant to pay the victim . . . the full amount of the victim's losses." 18 U.S.C. § 2259(b)(1). The term "full amount of the victim's losses" is defined in the restitution statute as "any costs incurred by the victim for—

(A)  medical services relating to physical, psychiatric, or psychological care;

(B)  physical and occupational therapy or rehabilitation;

(C)  necessary transportation, temporary housing, and child care expenses;

(D)  lost income;

(E)  attorneys' fees, as well as other costs incurred; and

(F)  any other losses suffered by the victim as a *proximate result* of the offense.

18 U.S.C. § 2259(b)(3) (emphasis added). The restitution stat-
ute defines "victim" as the "individual harmed as a result of
a commission of a crime" under 18 U.S.C. § 2251 *et seq.* 18
U.S.C. § 2259(c). The issuance of a restitution order under the
statute is mandatory. 18 U.S.C. § 2259(b)(4)(A).

The government argued before the district court that Bur-
gess should be held "jointly and severally liable with all other
defendants [for] the full amount of Vicky's losses." Based on
information provided by Vicky, the government sought resti-
tution in the amount of $305,219.86, representing the total
loss she allegedly had suffered to date.[6] During sentencing,
the district court stated only that "[r]estitution is required. I
have [the government's] restitution memorandum and will
order it in accordance with the restitution memorandum." The
district court accordingly ordered restitution in the amount of
$305,219.86.

In construing the statutory language, the salient issue
before us is whether a victim's loss attributable to a defendant
under the restitution statute is limited to losses proximately
caused by the defendant. Vicky asserts that the plain language
of the statute precludes the imposition of such a limitation.
She focuses on the restitution statute's use of the terms "*full*
amount of the victim's losses" and "*any costs* incurred by the
victim." 18 U.S.C. § 2259(b)(1) and (3) (emphases added).
She also notes that the only language in the restitution statute
expressly limiting recovery to losses that are the "proximate
result" of a defendant's conduct is found in subsection (F), at
the end of an enumerated list of categories. Therefore, Vicky
argues that the limitation should apply only to this "catchall"
provision, and that the other provisions, (A) through (E),
impose liability on a defendant for all of Vicky's losses in

---

[6]Although the documentation Vicky provided indicated a total loss
amount of $401,519.86, she previously had received $96,300.00 in restitu-
tion payments. The government reduced its request in light of this prior
recovery.

those categories under a theory of general causation, regardless of the level of attenuation.

We observe that we are not the first federal appeals court to consider this issue. Several of our sister circuits already have had occasion to address the application of the restitution statute with respect to victims depicted in child pornography. *See United States v. Kearney*, 672 F.3d 81 (1st Cir. 2012); *United States v. Aumais*, 656 F.3d 147 (2d Cir. 2011); *United States v. Crandon*, 173 F.3d 122 (3d Cir. 1999); *In re Amy Unknown*, 636 F.3d 190 (5th Cir.), *reh'g granted*, 668 F.3d 776 (5th Cir. 2012); *United States v. Kennedy*, 643 F.3d 1251 (9th Cir. 2011); *United States v. Laney*, 189 F.3d 954 (9th Cir. 1999); *United States v. McDaniel*, 631 F.3d 1204 (11th Cir. 2011); *United States v. Monzel*, 641 F.3d 528 (D.C. Cir. 2011).

Of the several circuits that have considered the general causation argument advocated by Vicky in this case, none currently has adopted such reasoning.[7] Instead, the courts of appeals have concluded that a proximate causation limitation is applicable to the restitution statute, although these courts have reached that conclusion using different rationales. With the benefit of these prior analyses, we examine the issue posed by the employment of a tort law principle in the construction of a criminal statute.

Some circuits have relied on the language of subsection (F) of the restitution statute to conclude that a proximate causa-

---

[7]The Fifth Circuit originally adopted a general causation analysis in *In re Amy Unknown*, 636 F.3d 190, and concluded that the "proximate cause" limitation applied only to the catchall provision in subsection (F). Accordingly, that court held that all defendants convicted of offenses against that particular victim were jointly and severally liable for the full amount of her loss. A later panel of that court, constrained by the precedent of *In re Amy*, criticized its reasoning. *See United States v. Wright*, 639 F.3d 679, 686-92 (5th Cir. 2011). Following *Wright*, the Fifth Circuit granted en banc review of *In re Amy*, effectively vacating the opinion. 668 F.3d 776.

tion limitation pervades throughout the statute. *See Crandon*, 173 F.3d at 125 (holding that the restitution statute "requires awarding the full amount of the victim's losses suffered as a proximate result of the offense," and relying on 18 U.S.C. § 2259(b)(3)); *McDaniel*, 631 F.3d at 1209 (quoting *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920), for the proposition that "[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all," and concluding that the statute is unambiguous). We conclude that the language of the restitution statute is not so easily resolved and, accordingly, we decline to adopt this line of reasoning.

A plurality of circuits have employed an overlay of traditional tort principles to the statutory language to resolve the ambiguity in the restitution statute. This approach first was employed in *Monzel*, in which the defendant, like Burgess, was convicted of possessing an image of child pornography. That image featured a victim, "Amy," who, like Vicky, has been actively pursuing her rights under the restitution statute. *Monzel*, 641 F.3d at 530. Although Amy sought $3.3 million in restitution, the district court had ordered that the defendant pay only $5,000.00, characterizing the amount as "nominal," and acknowledging that the award was less than the dollar amount of loss that the defendant caused Amy. *Id.* The district court also declined to hold the defendant jointly and severally liable for the entirety of Amy's harm, citing logistical difficulties. *Id.* at 531.

On appeal, the District of Columbia Circuit ordered that the district court recalculate the restitution award to reflect the actual harm suffered by Amy.[8] The court concluded that, based on the language of the restitution statute and "tradi-

---

[8]*Monzel* reached the circuit court on a writ of mandamus filed by Amy challenging the restitution award in the underlying criminal case.

tional principles of tort and criminal law," all the listed categories of losses in the restitution statute require a predicate finding of proximate causation. *Id.* at 535. Addressing the statutory language, the court observed that the restitution statute directs that defendants pay restitution to the "victim" of a crime of child sexual exploitation, and that the term "victim" is defined as "the individual harmed *as a result* of" a commission of a crime. *Id.* (citing 18 U.S.C. § 2259(a)-(c)) (emphasis added).

The decision in *Monzel* interpreted this statutory language in conjunction with the presumption that "a restitution statute incorporates the traditional requirement of proximate cause unless there is good reason to think Congress intended the requirement not to apply." *Id.* at 536 (citing *Sherwood Bros. v. District of Columbia*, 113 F.2d 162, 163 (D.C. Cir. 1940)). The court recognized that Congress is "presumed to have legislated against the background of our traditional legal concepts," and, absent language signaling a departure, those concepts ought to be employed. *Id.* (quoting *United States v. Gypsum Co.*, 438 U.S. 422, 437 (1978)).

We agree with this analysis and conclude that nothing in the text or structure of the restitution statute affirmatively indicates that Congress intended to negate the ordinary requirement of proximate causation for an award of compensatory damages. Rather, the statute's language, which defines a victim as one "harmed as a result of a commission" of a defendant's acts, invokes the well-recognized principle that a defendant is liable only for harm that he proximately caused.

To the extent that Congress has addressed the matter of causation in the restitution statute, Congress has suggested that proximate causation is a feature of the legislation. A Senate committee report on the bill setting forth the language of the restitution statute contained the following comment: "Mandatory restitution: This section requires sex offenders to pay costs incurred by victims as a *proximate result* of a sex

crime." S. Rep. No. 103-138, at 56 (1993) (emphasis added);
*see Kearney*, 672 F.3d at 96 n.11 (noting same).

We further are persuaded by the fact that the alternative
interpretation advanced by Vicky, which requires only general
causation rather than proximate causation, permits a measure
of loss wholly disproportionate to the harm inflicted by an
individual defendant. A general causation structure, without
the limitation imposed by a proximate causation requirement,
would expand the availability of restitution for even the most
attenuated damages.[9] And, as the court in *Monzel* noted, an
"intervening act" or a "superseding cause," which disrupts
proximate causation, does not impact causation in fact, or
general causation. *Id.* at 537 n.7. Thus, the expansive interpre-
tation resulting from a general causation analysis does not
comport with the limitations suggested by the six subsections
contained within the restitution statute. Accordingly, as
observed in *Monzel*, while it is within Congress' power to
abrogate the traditional requirement of proximate causation,
Congress must articulate a clearer methodology if it intends
to do so. 641 F.3d at 536-37.

Vicky asserts, nevertheless, that applying a proximate cau-
sation limitation to the restitution statute would circumvent
the express statutory command that a defendant pay the vic-
tim "the full amount of the victim's losses." 18 U.S.C.
§ 2259(b)(1)-(2). Vicky argues that by charging each defen-
dant who sexually exploited her with the full amount of her
losses, the statutory scheme will be given the appropriate
effect of placing the onus on the exploiters to apportion liabil-
ity among themselves, jointly and severally, for the harm that

___

[9]As an example, *Monzel* notes that, without the requirement of proxi-
mate cause, a victim of sexual exploitation injured in a automobile acci-
dent on her way to a therapist visit to address the harm inflicted by a
defendant would be entitled to compensation from that defendant for med-
ical bills resulting from the accident. 641 F.3d at 537 n.7. But for the ther-
apy required as a result of the defendant's actions, the victim would not
have been in the location of the accident.

they have caused, rather than placing such a burden on the victims. We disagree with Vicky's argument.

That argument is not supported by the structure or text of the statute. The phrase "full amount of the victim's losses" cannot be interpreted in a vacuum. This phrase is defined within the restitution statute itself, and is composed of subsections (A) through (F). Further, an interpretation of the phrase "full amount of the victim's losses" that allows complete recovery from each of hundreds of defendants who have viewed Vicky's image or otherwise have participated in her exploitation necessarily would lead to a system supporting multiple recovery. While full compensation would be unlikely from any individual defendant, Vicky's proposed interpretation of the restitution statute places no cap on her ultimate recovery, and would allow her to recover the amount of her losses many times over.[10]

We also observe that the tort concept of joint and several liability is not applicable in this context. In situations such as Vicky's, individuals viewing her video recordings inflict injuries at different times and in different locations. Therefore, those individuals cannot have proximately caused a victim the *same* injury.[11] As the court observed in *Monzel*, "so long as the requirement of proximate cause applies, as it does here, a defendant can be jointly and severally liable only for injuries

---

[10]We note that, at oral argument, Vicky's counsel assured this Court that she did not seek more than the full amount of her loss, regardless of the ultimate number of defendants convicted of causing her harm. We do not doubt her sincerity on this point. Nevertheless, our interpretation of the restitution statute cannot be predicated solely on the integrity of the victim in the present case.

[11]The dissent takes issue with this conclusion, suggesting that the determination whether the injuries inflicted by the defendant are divisible should be left to the district court in the first instance. However, as explained above, a defendant can only be responsible for the damage flowing from the injury he proximately caused, and not for the injuries inflicted by others at different times.

that meet that requirement." *Monzel*, 641 F.3d at 539 (citing Restatement (Second) of Torts § 879 cmt. b (1979) for the proposition that individual instances of exploitation are separate injurious results).

Accordingly, we reject Vicky's proposed interpretation of the restitution statute and join the plurality of circuits in adopting the reasoning set forth in *Monzel*. We hold, therefore, that Burgess is only responsible for losses sustained by Vicky that he proximately caused.

This concept of proximate causation, while much more limiting than the interpretation of the restitution statute advanced by Vicky, need not be unworkably narrow. It is well established that children featured in child pornography are harmed by the continuing dissemination and possession of that pornography. Such images are "a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *New York v. Ferber*, 458 U.S. 747, 759 (1982); *see also Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("The pornography's continued existence causes the child victims continuing harm by haunting the children in years to come.").

The First Circuit employed this understanding of child sexual exploitation when it developed its proximate causation analysis in *Kearney*. The defendant in that case argued that because many individuals had seen and distributed pornography featuring the victim seeking restitution, the defendant's contribution "cannot be said to have caused any harm absent specific linkage" establishing the victim's knowledge about his offenses. 672 F.3d at 98.

The court disagreed, reasoning that the victim need not prove that any single additional instance of possession of her image by itself increased her harm. *Id.* Rather, the court noted that proximate causation exists when "the tortious conduct of multiple actors has combined to bring about harm, even if the

harm suffered by the plaintiff might be the same if one of the numerous tortfeasors had not committed the tort." *Id.* Thus, the First Circuit held that "[p]roximate cause therefore exists on the *aggregate level*, and there is no reason to find it lacking on the individual level." *Id.* (emphasis added); *see also* Keeton, et al., *Prosser and Keeton on Torts* § 41 at 268 (5th ed. 1984) (noting that if, as a whole, multiple individuals are a but-for cause of harm, but application of the but-for rule to each would absolve all, each is a cause in fact of the event); *Restatement (Third) of Torts: Liability for Physical and Emotional Harm* § 27 cmt. g (same); *id.* § 36 cmt. a (noting that an insufficient condition may be a factual cause when combined with other acts to constitute a sufficient condition).

We find the reasoning of the First Circuit persuasive. Given the nature of the harm inflicted by purveyors and viewers of child pornography on their victims as recognized by the Supreme Court in *Ferber* and *Osborne*, employment of the concept of aggregate harm in the proximate causation analysis best effectuates the express intent of the restitution statute.

The establishment of proximate causation, however, is not the true challenge of the restitution statute. The primary difficulty that will face the district court on remand will be the determination, if the court finds that proximate causation has been established, of the quantum of loss attributable to Burgess for his participation in Vicky's exploitation. Vicky is entitled to the "full amount" of restitution for such loss, and we leave the calculation of such an amount to the district court in the first instance. While the district court is not required to justify any award with absolute precision, the amount of the award must have a sufficient factual predicate. Vicky's loss is an aggregation of the acts of the person who committed and filmed her assault, those who distributed and redistributed her images, and those who possessed those images. The culpability of any one defendant regarding Vicky's loss is dependent at least in part on the role that defendant played with respect to her exploitation.

We are confident in the skill of the district judges through-out this circuit to ascertain the appropriate amount of restitu-tion in a given case. Nevertheless, we are mindful of the challenges posed in the determination of damages under the restitution statute. Accordingly, we add our voice to that of the Ninth Circuit in *Kennedy* in requesting that Congress reevaluate the structure of the restitution statute in light of the challenges presented by the calculations of loss to victims in the internet age. 643 F.3d at 1266.

## VII.

In conclusion, we affirm Burgess' convictions and all aspects of his sentences except the amount of restitution ordered by the district court, which we hereby vacate. We remand the case to the district court for an individualized determination of proximate causation and, if such causation is found, for a restitution award consistent with the principles expressed in this opinion.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*

GREGORY, Circuit Judge, concurring in part, dissenting in part, and concurring in the judgment:

I concur in the majority's disposition of the case and in Parts I through V. I cannot, however, join Part VI. The major-ity's opinion prematurely and erroneously holds that the dis-trict court must allocate some specific amount of the proximately caused losses to the defendant. For that reason, I respectfully dissent from Part VI.

## I.

I agree with most of the majority's reasoning. I join fully in Parts I through V and further agree with the holding in Part

VI that 18 U.S.C. § 2259(b)(1) requires a defendant to pay only the losses he *proximately* caused. But the majority does not stop there; it goes on to consider the way in which losses that are proximately caused by more than one offender should be allocated. It holds that in such cases, the losses must be apportioned among those offenders, rather than permitting the victim to hold all of them jointly and severally liable. The majority writes, "The primary difficulty that will face the district court on remand will be the determination, if the court finds that proximate causation has been established, *of the quantum of loss attributable to Burgess* for his participation in Vicky's exploitation." *Ante* at 23 (emphasis added). I disagree with this holding for several reasons.

I first note that the district court has yet to make any findings with respect to proximate cause. That is, at this stage of the litigation we do not know whether Burgess proximately caused any of Vicky's injuries at all. The district court might find on remand that at least some of Vicky's injuries were caused by Burgess; or it might not. The majority puts the cart before the horse when it determines the manner in which Vicky's proximately caused losses must be allocated without any factual finding of proximate cause in the record.

Second, to the extent this Court deems it wise to consider how the proximately caused losses, if any, should be allocated, it incorrectly holds that those losses must be distributed among several offenders. This position is at odds with § 2259's plain language. Section 2259(b)(1) says that the district court shall "direct the defendant to pay the victim . . . the *full amount* of the victim's losses." 18 U.S.C. § 2259(b)(1) (emphasis added). Thus, the statute clearly requires the court to order Burgess to pay *all* of the losses he proximately caused, rather than some "quantum of loss attributable to [him]." As we have held, if the language of a statute is clear, we must end our inquiry and adopt that meaning. *E.g.*, *Ignacio v. United States*, 674 F.3d 252, 254 (4th Cir. 2012);

*United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010).

Third, this interpretation implicitly makes factual findings that must be left to the district court in the first instance. The common law holds joint tortfeasors jointly and severally liable for indivisible damages. *E.g.*, TORT LAW: RESPONSIBILITIES AND REDRESS 517 (John C.P. Goldberg et al., eds. 2008) ("[J]oint and several liability has long been available . . . in which two negligent actors, acting independently of one another, caused a single *indivisible* harm to the plaintiff . . . ."). As the majority recognizes, "Congress is 'presumed to have legislated against the background of our traditional legal concepts,' and, absent language signaling a departure, those concepts ought to be employed." *Ante* at 19. Thus the restitution question is resolved by asking whether Burgess proximately caused Vicky harm. Assuming that he did, the court must then consider whether those injuries are divisible from the injuries caused by the other offenders who also proximately harmed Vicky. If they are indivisible, then Burgess must be held jointly and severally liable for those injuries.

In my view, it is likely that if Burgess proximately caused Vicky psychological injury, this injury is indivisible from the psychological injuries proximately caused by the other offenders. I do not believe that a fact finder could meaningfully say precisely $x$ amount of Vicky's psychological injuries were caused by Burgess's watching the video, that $y$ amount was caused by Defendant #2's watching the same video, and so on. But whether my intuition proves to be correct, the district court has not made any factual findings on this question. That is, the district court never determined whether the injuries caused by the defendant are divisible. The majority, rather than remanding the case to the district court to consider this highly factual question, holds as a matter of law that the injuries Burgess allegedly caused *are* divisible, and that the district court must determine "the quantum of loss attributable to Burgess."

## II.

The majority's discussion of joint and several liability does not allay my concerns. In deciding whether to adopt a proximate cause limitation on restitution, the majority considers Vicky's argument that "applying a proximate causation limitation to the restitution statute would circumvent the express statutory command that a defendant pay the victim 'the full amount of the victim's losses.'" *Ante* at 20. The majority's response is to argue that such an interpretation

> necessarily would lead to a system supporting multiple recovery. While full compensation would be unlikely from any individual defendant, Vicky's proposed interpretation of the restitution statute places no cap on her ultimate recovery, and would allow her to recover the amount of her losses many times over.

*Id.* at 21. This analysis misses the mark for two reasons. First, it incorrectly interprets joint and several liability. While joint and several liability gives the plaintiff the option of collecting from any defendant she chooses, she may not recover more than her total loss: once she collects the full amount of her losses from one defendant, she can no longer recover from any other. *See* TORT LAW, *supra* at 517. Second, the argument conflates proximate causation with the *allocation* of losses. The question of whether a defendant proximately caused some injury is entirely separate from the question of how those proximately caused losses should be allocated among several offenders. Even if this Court adopted Vicky's reasoning and held that Burgess must pay restitution for the losses he caused (whether proximately or not), it would still have to determine how those losses should be allocated in cases where more than one offender caused them.

## III.

The majority's treatment of the restitution order is at odds with the plain language of the statute and implicitly makes

factual findings better left to the district court. For these reasons, I would hold that Burgess is responsible both for the injuries he proximately caused and for any injuries indivisible from those that he proximately caused. I would then remand the case to the district court to make the relevant factual findings.