RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0110p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 11-6131

CHRISTOPHER HARGROVE, aka John
Christopher Hargrove,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:08-cr-14-1—William J. Haynes, Jr., District Judge.

Decided and Filed: April 19, 2013

Before: CLAY and STRANCH, Circuit Judges; BELL, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** C. Douglas Thoresen, Andrew Brandon, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellant. Richard A. Friedman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., S. Carran Daughtrey, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

STRANCH, J., delivered the opinion of the court, in which BELL, D. J., joined, and CLAY, J., joined in part. CLAY, J. (pp. 9–14), delivered a separate opinion concurring in part and in the judgment.

---

[*] The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

———————————

**OPINION**

———————————

JANE B. STRANCH, Circuit Judge.   Christopher Hargrove pled guilty to possession of child pornography.  Among the hundreds of images he possessed were those of three child victims who are now adult women known by their pseudonyms, "Vicky," "Amy," and "L.S."  At sentencing the district court ordered Hargrove to pay restitution to these victims.  The court also imposed contingent joint and several liability on Hargrove in the event the victims are unable to acquire necessary resources to pay for their psychological treatment from defendants convicted in other cases who also viewed the images and videos.  Hargrove asks us to set aside the restitution order because the court did not require the government to prove that he caused actual and proximate harm to the victims and because the court lacked authority to enter the contingent restitution order.  In light of our decisions in *United States v. Gamble*, 709 F.3d 541 (6th Cir. 2013), and *United States v. Evers*, 669 F.3d 645 (6th Cir. 2012), we vacate the restitution order and remand the case to the district court for further proceedings.

## I.  PROCEDURAL HISTORY

Forensic examination of Hargrove's computer revealed more than eight hundred images and sixteen videos depicting the sexual exploitation of children.  "L.S." appeared in eight of those images, "Amy" in three images, and "Vicky" in one video.  In January 2008 the government indicted Hargrove on two counts of transporting child pornography in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(1) & (b)(1); one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) & (b)(1); and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) & (b)(1).  Nearly one year later Hargrove pled guilty to the possession charge under a plea agreement with the government and then absconded.

Upon return to federal custody, Hargrove pled guilty in a separate case to a charge of failure-to-appear, in violation of 18 U.S.C. §§ 3146(a)(1), (b)(1)(A)(ii), &

3147(1). The court consolidated the two cases and pronounced a sentence of 60 months in prison on the child pornography offense and 12 months in prison on the failure-to-appear offense, to be served consecutively. The court also imposed twenty years of supervised release.

Based on expert reports and other materials, the victims claimed they had incurred substantial losses, primarily for psychological treatment: "Amy," over $3.3 million; "Vicky," over $148,000; and "L.S.," $150,000. The court found that the mandatory restitution statute, 18 U.S.C. § 2259, supplied "statutory causation" to support restitution, but held that apportionment of the victims' losses was appropriate because other courts also had awarded restitution to the same victims in other cases. The court ordered Hargrove to pay $3,000 in restitution to each victim. As an alternative, the court imposed joint and several liability on Hargrove in the amount of $150,000 for each victim "if it turns out these victims aren't getting the care that they need for reason of lack of money." R. 166 Page ID 974.

In this timely appeal, Hargrove challenges only the restitution order. He does not raise any issue concerning his convictions or the other aspects of his sentences.

## II. STANDARD OF REVIEW

"We review de novo the question whether restitution is permitted under the law." *Evers*, 669 F.3d at 654 (citing *United States v. Jones*, 641 F.3d 706, 713 (6th Cir. 2011)). If restitution is permissible, we review the amount of restitution imposed by the court for abuse of discretion. *Id.* The government has the burden to prove the amount of the victim's loss by a preponderance of the evidence. 18 U.S.C. §§ 2259(b)(2), 3664(e); *Evers*, 669 F.3d at 654–55.

## III. ANALYSIS

The parties agree that the district court erred when it ordered restitution under § 2259 without requiring the government to demonstrate that any of the losses sustained by "Vicky," "Amy," and "L.S." were proximately caused by Hargrove's offense. The parties rely on *Evers*, 669 F.3d at 659, where we held that the government must prove

proximate cause with respect to all categories of losses set forth in § 2259(b)(3)(A)–(F) before restitution may be ordered.  The district court did not have the benefit of *Evers* because we issued that opinion nearly six months after Hargrove's sentencing.

More recently, in *Gamble*, we considered two child pornography cases in which the district court required each defendant, jointly and severally, to pay over $1 million in restitution to "Vicky."  *Gamble*, 709 F.3d at 542.  Applying *Evers*, we held that the government bears the burden to "show that the costs incurred by the victim were proximately caused by the defendant's offense."  *Id.* at 546.

We explained in *Gamble* that a child pornography victim may recover restitution under § 2259 upon a showing that the defendant's conduct is a cause-in-fact of the victim's harm—in other words, the defendant actually caused the victim's losses—and the defendant's conduct proximately caused the victim's harm.  *See id.* at 547.  To be proximately caused, the harm must be reasonably foreseeable.  *Id.* at 549.

Hargrove principally contends that the victims cannot show he is the cause-in-fact of their injuries because there is no evidence that the victims knew he possessed and viewed their pornographic images or that the victims' injuries were more severe because he obtained and viewed their images.  Additionally, he argues that he did not proximately cause harm to the victims because any harm resulting from his anonymous Internet downloads was "remote" and "indirect."

Some courts have adopted reasoning similar to Hargrove's.  *See e.g.*, *United States v. Aumais*, 656 F.3d 147, 154–55 (2d Cir. 2011) (holding defendant did not proximately cause "Amy's" loss because he was not a "substantial cause" of her harm); *United States v. Kennedy*, 643 F.3d 1251, 1264 (9th Cir. 2011) (finding no proof of causal connection between defendant's offense and specific losses of "Amy" and "Vicky"); *United States v. Monzel*, 641 F.3d 528, 538 (D.C. Cir. 2011) (finding no showing that "Amy's" losses were traceable to the defendant).  But we expressly rejected such reasoning in *Gamble*, stating that "[a] cause-in-fact requirement does not necessarily mean that defendants of whom Vicky is unaware have not caused her losses . . . .  Vicky's losses result from the knowledge that her image is being generally

circulated, and a district court could find that defendants like Crawford contributed to that knowledge." *Gamble*, 709 F.3d at 549 n.1 (citing *United States v. Kearney*, 672 F.3d 81, 98–99 (1st Cir. 2012)).

In *Kearney*, the child pornography possessor tried to use a but-for causation standard to limit "Vicky's" reasonably foreseeable losses arguing that, "because so many have seen and distributed the pornography, his contribution cannot be said to have caused any harm absent specific linkage to Vicky's knowledge about him." *Kearney*, 672 F.3d at 98. But Vicky's losses result from the knowledge that her image is being generally circulated by multiple actors. As a result of that circulation, the emotional harm she suffers is worse than would otherwise be the case. *See id.* "When the conduct of two or more actors is so related to an event that their combined conduct, viewed as a whole, is a but-for cause of the event, and application of the but-for rule to each of them individually would absolve all of them, the conduct of each is a cause in fact of the event." *Id.* (quoting W. Page Keeton et al., *Prosser and Keeton On The Law Of Torts* § 41, at 268 (5th ed. 1984)). Under this reasoning, Hargrove's conduct in possessing and viewing the victims' pornographic images is a but-for cause of the victims' harm. *See Gamble*, 709 F.3d at 556 (Kethledge, J., concurring in part and concurring in the judgment) ("I would . . . adopt the First Circuit's rule of aggregate causation (though only for purposes of determining actual cause.) *See United States v. Kearney*, 672 F.3d 81, 98 (1st Cir. 2012). And where that test is met, as it is here, I would simply move on to the issue of proximate causation.").

To the extent Hargrove's argument relates to "proximate causation, rather than but-for causation, the same reasoning applies to reject his contention." *See Kearney*, 672 F.3d at 98. Proximate cause exists "even where 'none of the alternative causes is sufficient by itself, but together they are sufficient' to cause the harm." *Id.* (quoting Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 27 reporters' n. cmt. g. (2010); *id.* § 36 cmt. a ("[E]ven an insufficient condition . . . can be a factual cause of harm when it combines with other acts to constitute a sufficient set to cause the harm . . . .")). Because proximate cause "exists on the aggregate level . . . there is no

reason to find it lacking on the individual level." *Id.* Upon adopting the First Circuit's reasoning in *Kearney*, the Fourth Circuit observed that, "[g]iven the nature of the harm inflicted by purveyors and viewers of child pornography on their victims . . . employment of the concept of aggregate harm in the proximate causation analysis best effectuates the express intent of the restitution statute." *United States v. Burgess*, 684 F.3d 445, 459–60 (4th Cir. 2012).

Our analysis based on *Kearney* is fully consistent with *Gamble.* There we explained that harm must be reasonably foreseeable to be proximately caused by the defendant's criminal conduct, and "if the injury is the type that the statute was intended to prohibit," it is more likely that the injury was proximately caused by the defendant. *Id.* at 549. Because "[t]he harm endured by the subject of child pornography upon realizing that others are viewing her image is part of what the child pornography prohibitions are designed to deter" and where the statute specifically permits restitution for injury in the form of mental distress, the "attendant costs, to the extent factually caused by the viewing, are proximately caused." *Id.* at 550. Even if a child pornography victim "suffers very unusual psychosomatic injuries as a result of knowing that her mistreatment and humiliation are being viewed by others, those injuries are still part of the harm that the laws against child pornography are trying to avoid." *Id.* Likewise, attorney's fees incurred when undertaking reasonable efforts to obtain restitution for mental harm are proximately caused. *Id.* But some losses may not be recoverable because they do not stem from the type of injury the statute was intended to prohibit. For instance, although § 2259(b)(3)(C) allows restitution for necessary child care expenses, the "loss of a sex offender as a babysitter" is not "the sort of harm contemplated by the statute's drafters" and thus, proximate cause does not exist to justify restitution for child care costs incurred to replace that babysitter. *Id.* (citing *Evers*, 669 F.3d at 660).

The language of § 2259, the remedial nature of the provision, and its mandatory requirement that the defendant pay the "full amount of the victim's losses" all point to the expansive categories of harm § 2259 seeks to redress. But whether the injuries

alleged by each victim in this case fall within the scope of § 2259 so that the injuries are more likely to be proximately caused is an inquiry reserved for the district court on remand.  If the government carries its burden to prove that a restitution award for "Vicky," "Amy," or "L.S." is appropriate, the court must consider that the defendant is not responsible for harm that occurred before the date of his offense.  *See Gamble*, 709 F.3d at 554.  Costs for the harms Hargrove proximately caused that are "clearly traceable" to him—such as the victims' attorney's fees incurred in seeking restitution in this case—may be assessed directly to him.  *See id.*  And where the court must allocate restitution for aggregate harm caused by multiple defendants, the court may, as one option, apportion the restitution award using the formula described in the government's appellate brief and approved by this court in *Gamble*.  *Id.*

Undertaking such an analysis, the district court would first determine "the pool of a victim's provable losses that are not traceable to a single defendant using the proximate cause standard" elucidated in *Gamble* and then divide that figure by the number of "convicted possessors" supplied by the government from its database of convicted child pornography defendants.  *See id.*  But "[d]ifferent divisors may be reasonable," and the government's "apportionment proposal is not necessarily the only way to calculate restitution" in these kinds of cases.  *Id.*  District courts may consider other formulas or procedures for allocating restitution to redress the victims' injuries, keeping in mind that the method chosen must "fairly implement Congress's goals."  *Id.*  Courts may not apportion restitution by imposing joint and several liability, as was done here.  *See id.* at 550–53.

## IV.  CONCLUSION

Were we writing on a blank slate, our opinion would have examined more thoroughly the thoughtful analysis undertaken by the concurrence.  But in light of *Gamble* and *Evers*, we are compelled to conclude that the district court's method of awarding restitution to "Vicky," "Amy," and "L.S." amounted to an abuse of discretion.  Because the district court did not have the guidance of *Gamble*, *Evers*, or this opinion

when it sentenced Hargrove, we now provide the court with an opportunity to consider the impact of these cases on Hargrove's sentence.

We VACATE the restitution order and REMAND the case for further proceedings consistent with this opinion, *Gamble*, and *Evers*.  On remand, the district court may consider the restitution award for each victim de novo, exercising its discretion to admit new evidence or argument.

---

**CONCURRING IN PART AND IN THE JUDGMENT**

---

CLAY, Circuit Judge, concurring in part and concurring in the judgment. I concur in much of the majority's opinion and in the judgment because I find, as does the majority, that the outcome of this case is largely controlled by our recent decision in *United States v. Gamble*, 709 F.3d 541 (6th Cir. 2013). I write separately, however, to express my dissatisfaction with *Gamble*'s method for apportioning restitution among defendants convicted of child pornography possession offenses.

Admittedly, these cases pose significant challenges. Courts must attempt to determine whether and to what extent possessors of child pornography are financially responsible for the harm suffered by the victims of these horrific crimes. We are called upon to apply traditional principles of restitution to a crime that has no obvious analogue—a crime whereby individual victims are harmed by the ongoing conduct of numerous independent perpetrators. In this unusual context, it is vital that district courts have all available sentencing options at their disposal, including joint and several liability, which *Gamble* unfortunately rejects.

As an initial matter, *Gamble* properly concludes that the mandatory victim restitution statute, 18 U.S.C. § 2259, requires the government to prove that a victim's losses were proximately caused by the defendant's conduct. *Gamble*, 709 F.3d at 547 (citing *United States v. Evers*, 669 F.3d 645, 659 (6th Cir. 2012)). To satisfy the requirement of proximate cause, a victim's losses must be "directly attributable" to and a "reasonably foreseeable" result of the defendant's conduct. *Id.* I have no quarrel with that standard, but for all the ink spilled over the issue of proximate cause in these cases, it gets us no closer to a satisfying method of determining what portion of a victim's losses, if any, should be charged to any individual defendant. *See United States v. Burgess*, 684 F.3d 445, 462 (4th Cir. 2012) (Gregory, J., concurring in part, dissenting in part, and concurring in the judgment) ("The question of whether a defendant

proximately caused some injury is entirely separate from the question of how those proximately caused losses should be allocated among several offenders.").

The discussion of proximate cause in *Gamble* is not terribly helpful because the analysis of causation, both proximate (legal) and but-for (factual), is relatively straightforward once traditional tort-law principles of aggregate causation are employed. Defendants in these cases argue that the diffuse and anonymous nature of their conduct precludes a finding that they were the factual causes of any injuries. The majority properly clarifies that which *Gamble* left somewhat vague, that even if conduct is insufficient by itself to cause a given harm, liability attaches when the conduct is sufficient to cause the harm when combined with the wrongful conduct of others. *See* Maj. Op. at 5; *see also Gamble*, 709 F.3d at 556 (Kethledge, J., concurring); Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 27 cmt. f (2010). If the opposite rule were adopted, each defendant would be able to escape restitution even though it is undisputed that the defendants' collective action caused the victims' harm.

Once factual causation is established, we next ask whether the victims' losses were proximately caused by a given defendant's conduct. The majority properly uses the same theory of aggregate causation to find proximate cause in this case. Maj. Op. at 5; *see also United States v. Kearney*, 672 F.3d 81, 98 (1st Cir. 2012) ("Proximate cause . . . exists on the aggregate level, and there is no reason to find it lacking on the individual level."). Because each possessor of child pornography contributes to the conduct that undisputably causes harm to the victims, that harm is "directly attributable" to the perpetrators and, with a few small exceptions, is "reasonably foreseeable." *Gamble*, 709 F.3d at 547; *Evers*, 669 F.3d at 660 (finding that the "loss of a sex offender as a babysitter" was not a foreseeable result of a child pornography offense).

After a defendant is found to be both a factual and proximate cause of a victim's harm, the statute requires an order of restitution for "the full amount of the victim's losses." 18 U.S.C. § 2259(b)(1). Under the theory of aggregate causation that both *Gamble* and the majority endorse, each defendant should be considered to have caused the entirety of the victim's harm. Yet both favor grafting an apportionment regime onto

the proximate cause requirement. *Gamble* even acknowledges this by stating that the question of apportionment "is in a sense distinct from that of proximate causation, because if the injuries for which Vicky seeks restitution were caused in fact by the defendants, most of the types of damages she seeks are proximate." *Gamble*, 709 F.3d at 551. However, in an effort to avoid "unlimited liability for a single action," *Gamble* goes on to sanction a needlessly rigid apportionment scheme and reject the obvious solution of joint and several liability.

As with restitution in other criminal contexts, the statute empowers the district courts to issue and enforce restitution orders in child pornography cases according to the procedures outlined in 18 U.S.C. § 3664. *See* 18 U.S.C. § 2259(b)(2). Among these procedures is § 3664(h), which states:

> If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.

*Id.* § 3664(h). By authorizing joint and several liability or apportionment at the district court's discretion, this provision gives the district courts appropriately wide latitude to fashion restitution awards to best effectuate the statute's purpose of fully compensating victims. As the en banc Fifth Circuit has held, the mechanism of joint and several liability authorized by § 3664(h) "applies well in these circumstances, where victims [of child pornography] are harmed by defendants acting separately who have caused [them] a single harm." *In re Amy Unknown*, 701 F.3d 749, 769 (5th Cir. 2012).

Several courts have held that the joint and several liability envisioned in § 3664(h) applies only when multiple defendants are sentenced in the same proceeding before the same district court. *See United States v. Fast*, 709 F.3d 712, 723 n.6 (8th Cir. 2013); *United States v. Laraneta*, 700 F.3d 983, 992–93 (7th Cir. 2012); *United States v. Aumais*, 656 F.3d 147, 156 (2d Cir. 2011); *United States v. Monzel*, 641 F.3d 528, 539 (D.C. Cir. 2011); *cf. United States v. McGlown*, 380 F. App'x 487, 491 (6th Cir. 2010) (finding that § 3664(h) does not apply where non-defendants contributed to a victim's

loss, but declining to address whether defendants must be part of the same case).  These cases overread the statute.  If a sentencing judge can order each defendant in a multi-defendant case to pay the full amount of a victim's losses, there is no reason to prohibit the judge from doing the same thing when other defendants were convicted of the same crime in other jurisdictions.  *See In re Amy Unknown*, 701 F.3d at 770 ("[N]othing in § 3664 forbids [joint and several liability], either expressly or through implication; the fact that it conforms well to this context supports its application."); *Fast*, 709 F.3d at 727 (Shepherd, J., concurring in part and dissenting in part).

Traditional tort-law principles also counsel in favor of giving district judges the option of joint and several liability in this context.  In a typical multi-defendant tort action, an indivisible injury caused by numerous defendants would lead to the imposition of joint and several liability, with the risk that some defendants will be unable to pay borne by the other defendants, not the victim.  *See* Restatement (Third) of Torts: Apportionment of Liability § A18, cmt. a (2000).  The historical policy decision to shift the burden of insolvency from tort plaintiffs to defendants fits perfectly with the statutory goal of fully compensating victims of child pornography.  *See* S. Rep. No. 103-138, at 56 (1993) (stating that mandatory restitution for victims of sex crimes is designed to create an assumption that defendants will pay the victims' expenses).

*Gamble* and other courts have rejected joint and several liability because defendants in these cases are either functionally or legally prohibited from seeking contribution from each other.  *See Gamble*, 709 F.3d at 552; *Laraneta*, 700 F.3d at 992 (citing *Northwest Airlines, Inc. v. Transport Workers Union of America AFL-CIO*, 451 U.S. 77, 96–97 (1981)).  However, even without a right of contribution, the statutory scheme contains mechanisms to ensure that defendants are not saddled with unfair or arbitrary restitution awards.

The district courts are given discretion to enforce the awards through all "available and reasonable means," 18 U.S.C. § 3664(m)(1)(A)(ii), including establishing a payment schedule after considering the defendant's financial resources, assets, projected future income, and financial obligations, *id.* § 3664(f)(2).  If the defendant's

financial circumstances change, the district court may "adjust the payment schedule, or require immediate payment in full, as the interests of justice require."  *Id.* § 3664(k). Using information provided either by the victims themselves or the government, district courts would also be able to adjust or halt the payment of restitution once a victim is fully compensated.  *See Burgess*, 684 F.3d at 462 (Gregory, J., concurring in part, dissenting in part, and concurring in the judgment) ("While joint and several liability gives the plaintiff the option of collecting from any defendant she chooses, she may not recover more than her total loss.").

Joint and several liability may not always be appropriate, but it should be one option available to the district courts when they order defendants to pay restitution to the victims of child pornography.  That option seems especially appropriate in cases such as this, where victims were harmed by the knowledge that people like Defendant were viewing images of their abuse, and their harm is not susceptible to division.  However, if the district court were presented with evidence that a given defendant was more or less culpable than other possessors of child pornography, the statute empowers the court to "apportion liability among the defendants to reflect the level of contribution to the victim's loss."  18 U.S.C. § 3664(h).

The formula endorsed by *Gamble* does not give the district courts the freedom to make these individualized inquiries into the facts and circumstances of a particular defendant's crime.  *Gamble* purports to acknowledge that district courts have "considerable discretion" to fashion appropriate restitution awards, but then proceeds to narrow that discretion by recommending adherence to a rote formula.  *Gamble*, 709 F.3d at 554.  Instead, the district courts should be free to impose restitution based on facts that bear on a defendant's culpability relative to other defendants as well as the nature and extent of the victims' losses.  Judge Kethledge identified a number of these factors in his concurring opinion in *Gamble*; they include "whether the defendant produced or distributed images of the victim" and "how many images the defendant possessed." *Gamble*, 709 F.3d at 557 (Kethledge, J., concurring).  If the district court concludes that it can separate out a victim's losses and apportion restitution based on factors such as

these, it should have the discretion to do so. On the other hand, if the district court finds that the harm done is truly indivisible and cannot be meaningfully apportioned among defendants, it should have the discretion to impose joint and several liability based on the aggregate or cumulative harm suffered by the victim.

To accomplish the difficult task of assigning financial responsibility to possessors of child pornography for the harm caused by their conduct, district judges should have all the tools provided by law at their disposal and should be permitted broad discretion to fashion an appropriate remedy—something that *Gamble*'s formulaic approach utterly fails to do. Although *Gamble* suggests that other allocation formulas or procedures for determining restitution may be used, it fails to describe any method other than the one it approves, and it specifically rejects joint and several liability. The district courts should be permitted to apportion a victim's losses based on individualized determinations, impose joint and several liability, or devise alternative methods for allocating varying degrees of fault among perpetrators. I disagree with *Gamble* to the extent that it excludes these options and severely circumscribes the district courts' discretion, but because I acknowledge *Gamble*'s binding authority, I respectfully concur in the Court's judgment.