RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0054p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

                                                    Nos. 11-5394/5544

           v.

JAMES D. GAMBLE (11-5394) and SHAWN
CRAWFORD (11-5544),
           *Defendants-Appellants.*

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:10-cr-137-1—Curtis L. Collier, Chief District Judge;
No. 1:10-cr-134-1—Harry S. Mattice, Jr., District Judge.

Argued: July 27, 2012

Decided and Filed: February 27, 2013

Before: ROGERS and KETHLEDGE, Circuit Judges; MARBLEY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Laura E. Davis, FEDERAL DEFENDER SERVICES OF EASTERN
TENNESSEE, INC., Knoxville, Tennessee, for Appellant in 11-5394. Leslie A. Cory,
ORTWEIN & CORY, LLC, Chattanooga, Tennessee, for Appellant in 11-5544. Richard
A. Friedman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellee in 11-5394 and 11-5544. Paul G. Cassell, S.J. QUINNEY COLLEGE OF
LAW AT THE UNIVERSITY OF UTAH, Salt Lake City, Utah, for Amicus Curiae in
11-5394 **ON BRIEF:** Laura E. Davis, FEDERAL DEFENDER SERVICES OF
EASTERN TENNESSEE, INC., Knoxville, Tennessee, Myrlene R. Marsa, FEDERAL
DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee,
for Appellant in 11-5394. Leslie A. Cory, ORTWEIN & CORY, LLC, Chattanooga,
Tennessee, for Appellant in 11-5544. Richard A. Friedman, UNITED STATES

_____

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of
Ohio, sitting by designation.

DEPARTMENT OF JUSTICE, Washington, D.C., John P. MacCoon, UNITED STATES ATTORNEY'S OFFICE, Chattanooga, Tennessee, for Appellee in 11-5394 and 11-5544. Anne-Marie Svolto, UNITED STATES ATTORNEY'S OFFICE, Chattanooga, Tennessee, for Appellee in 11-5544. Paul G. Cassell, S.J. QUINNEY COLLEGE OF LAW AT THE UNIVERSITY OF UTAH, Salt Lake City, Utah, James R. Marsh, MARSH LAW FIRM PLLC, White Plains, New York, Carol L. Hepburn, CAROL L. HEPBURN PS, Seattle, Washington, for Amici Curiae in 11-5394 and 11-5544.

ROGERS, J., delivered the opinion of the court in which MARBLEY, D. J., joined, and KETHLEDGE, J., joined in part. KETHLEDGE, J. (pp. 22–24), delivered a separate opinion concurring in all but part II.B of the majority's opinion and concurring in the judgment.

––––––––––––––––––

**OPINION**

––––––––––––––––––

ROGERS, Circuit Judge. In unrelated child pornography convictions, both James Gamble and Shawn Crawford were ordered by their respective district courts to pay over $1,000,000 in restitution to "Vicky," the pseudonym of one of the individuals depicted in the images they possessed or received. Restitution was ordered jointly and severally under 18 U.S.C. § 2259, which makes restitution mandatory for "the full amount of the victim's losses" in child exploitation cases. Because the district courts did not require a showing of proximate cause between the losses and the defendants' offenses, and this circuit's case law requires such a showing, the cases must be remanded so that this analysis can take place. On remand, moreover, the district court must reconsider the extent to which the defendants must pay restitution where they share responsibility for Vicky's injuries with hundreds of other child pornography viewers. Finally, while Gamble additionally appeals his within-Guidelines prison sentence, it is substantively reasonable.

I. BACKGROUND

A. *Gamble*

James Gamble pleaded guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2).  At his sentencing hearing, in addition to terms of imprisonment and supervised release, the district court ordered Gamble to pay $1,002,766.85 in restitution.  The amount was owed to one of the individuals depicted in some of the images in Gamble's possession, known today by her pseudonym, "Vicky."  Gamble took no part in the production of the images of Vicky, and there is no record of his ever meeting her or trying to contact her.  However, the Government submitted several exhibits outlining Vicky's losses as a result of being the subject of a series of pornographic images as a child and of her knowledge that the images were still in circulation, including past and future psychological treatment, past and future educational and vocational counseling, future lost earnings, and attorneys' fees.  The Government argued that, under 18 U.S.C. § 2259, Gamble was responsible for these losses, as was every other defendant convicted of distribution, receipt, and possession of the images.

18 U.S.C. § 2259, which is entitled "Mandatory restitution," reads in full:

(a) In general.—Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offense under this chapter.

(b) Scope and nature of order.—

(1) Directions.—The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court pursuant to paragraph (2).

(2) Enforcement.—An order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A.

(3) Definition.—For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for—

(A) medical services relating to physical, psychiatric, or psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) attorneys' fees, as well as other costs incurred; and

(F) any other losses suffered by the victim as a proximate result of the offense.

(4) Order mandatory.—(A) The issuance of a restitution order under this section is mandatory.

(B) A court may not decline to issue an order under this section because of—

(i) the economic circumstances of the defendant; or

(ii) the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source.

(c) Definition.—For purposes of this section, the term "victim" means the individual harmed as a result of a commission of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named as such representative or guardian.

At the hearing, counsel for Gamble objected to restitution, arguing that "in the proof before the Court there is no identifiable proof as to what damages, if any, Mr. Gamble caused to this victim." Sentencing Hr'g Tr. 7, Mar. 17, 2011. Counsel pointed out that many of the damages asserted were incurred before the photos of Vicky were found in Gamble's possession, making it difficult to show how he could have caused them, and that most of the rest were for future costs, which were speculative. Counsel for Gamble also read the phrase "any other losses suffered by the victim as a proximate result of the offense" in § 2259(b)(3)(F) as applying to all the previous subsections of

the statute, meaning that all losses must be shown to be proximately caused by Gamble in order for restitution to be assessed against him.

The Government responded that while it is "very hard to allocate the harm" caused by those possessing images of Vicky, "[t]here is a total harm done, and every one of these people who view those images ought to bear part of that burden." Hr'g Tr. 11–12. The Government admitted that the materials submitted could not present precisely how much damage Gamble caused, but posited that "[t]he question really is, what is the total damage, and what is a fair share for this gentleman to participate in." *Id.* at 12–13. When questioned by the district court about how to read § 2259, the Government responded, "Literally construed and narrowly read, I think this Court is being told by Congress to order the entire amount [of restitution]," but that as a practical matter, courts around the country were choosing to arrive at that amount by apportioning it among multiple defendants. *Id.* at 14–15. The Government argued, however, that to read the statute as narrowly as counsel for Gamble wanted, "as a matter of fairness, . . . doesn't seem to comport with the broad purposes of this statute." *Id.* at 22.

The district court pointed out that under § 2259, restitution in Gamble's case was mandatory and that the burden was on the Government to demonstrate the amount. The district court noted that evidence included estimates from doctors for Vicky's costs for therapy and mental health treatment, expert reports regarding lost income and estimates for occupational counseling, and declarations for attorneys' fees. The court determined that it would not be rational for Congress to say that because certain losses had not yet been ascertained, that did not mean they had not been incurred: "The losses are here now; they have just not been realized." *Id.* at 25. The district court concluded "that ascertainable future losses are included within the concept of 'full amount of the victim's losses.'" *Id.* at 26. As for the proximate cause issue, the district court read § 2259 to mean that a proximate cause requirement attached to the "catch-all category" in (b)(3)(F) but not the items listed in (b)(3)(A)–(E). *Id.* at 28. The district court found by a preponderance of the evidence that "the total amount of loss suffered by the identifiable

victim Vicky" was $1,002,766.85 and ordered that amount paid, to be reduced as other money is collected.  *See Id.* at 28, 56.

## B.  *Crawford*

Shawn Crawford pleaded guilty to one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2).  At sentencing, in addition to terms of imprisonment and supervised release, the district court ordered Crawford to pay $1,002,076.85 in restitution to Vicky, a slightly lower amount than in Gamble's case because Vicky had received funds in the interim.  Counsel for Crawford objected to the award of restitution.  Counsel pointed out that Vicky was never even made aware of Crawford's existence, and "if she doesn't even know about it, he hasn't done any harm to her."  J. Proceedings Tr. 61, Apr. 19, 2011.  Counsel also argued that the quality of the Government's proof did not rise to the level of a showing of probable cause, and that the exhibits were "cookie cutter" without pertaining particularly to Crawford.  *Id.* at 68.  The Government made arguments similar to those it made in Gamble's case in support of restitution, and in fact mentioned the restitution in Gamble's case as an example the court could follow.

The district court rejected Crawford's assertion that § 2259 required proof of proximate cause in order to award restitution.  It also read the statute's "proximate cause" phrase to apply only to the final provision, § 2259(b)(3)(F), and not to the previous five categories.  The district court ordered that the restitution award be made "joint and several with all defendants in all courts throughout the United States," while acknowledging "that I don't have a clue how that can be administered."  *Id.* at 71.  The district court additionally ruled that the proof offered by the Government did not establish proximate cause between Crawford's conduct and any harm suffered by Vicky.  The district court admitted that it had "some very, very substantial doubts about the adequacy of this proof," but that "my ruling has to be that . . . the government has carried its burden of proof by the very skin of its teeth."  *Id.* at 77.

Crawford appeals the restitution order.  Gamble appeals both the restitution order and the prison sentence.  The Government on appeal has modified its position regarding

the existence of a proximate cause requirement, and regarding whether entire liability, as opposed to allocated liability, is appropriate in such cases.  Vicky has been given leave by the court to participate as amicus curiae in both cases.

## II.  RESTITUTION

### A.  *Requirement of Proximate Cause*

In order for restitution to be granted under 18 U.S.C. § 2259, the Government must show that the costs incurred by the victim were proximately caused by the defendant's offense.  This conclusion is supported both by our precedent and by an independent reading of the statute.  Because neither district court here required a proximate cause showing, both Crawford's and Gamble's cases must be remanded for further proceedings.

In *United States v. Evers*, 669 F.3d 645, 659 (6th Cir. 2012), this court held that "restitution awards for all categories of losses set forth in § 2259(b)(3)(A)–(F) require the government to show that the losses were proximately caused by the defendant's offense."  This holding is binding on us.  It is a statement necessary to the court's holding in that case, because the *Evers* court used it as justification to uphold part of the restitution award and to vacate another part of it.  The argument of amicus to the contrary, that the statements in *Evers* on proximate cause are nonbinding dicta, is not convincing.

Evers was convicted of, among other things, production and possession of child pornography.  The district court ordered $1640 in restitution to the child's legal guardian—$1500 for lost wages due to the guardian's attendance at court proceedings, and $140 for childcare expenses.  Both lost income and childcare are specifically listed in § 2259(b)(3)(A)–(E) as costs incurred by the victim, and the definition of victim can include a child's guardian.  On appeal, Evers argued that he should not have to pay those costs because they were not proximately caused by his offenses.  After confirming that the child's guardian met the definition of victim under the statute, we considered the question of "whether there is a proximate cause requirement for all categories of losses,

or whether a more 'general' standard of causation suffices for the losses listed in subsection (b)(3)(A) through (E)." 669 F.3d at 657–58. We ultimately concluded that there was a proximate cause requirement, and that the district court did not err in awarding $1500 in restitution for lost wages. The district court had reasoned that "this loss was proximately caused by Evers' criminal conduct." *Id.* at 659. We vacated the $140 award for child care, however, because Evers had been providing free babysitting, and it was the loss of him as a babysitter that led to the childcare expenses. Even though child care was specifically listed in 18 U.S.C. § 2259(b)(3)(C), the court held that a proximate cause showing was necessary. We held that "[a]bsent additional evidence, the link between the child care costs and Evers' crimes is too attenuated to support the restitution award." *Id.* at 660.

In *Evers*, we stated that there was a proximate cause requirement and then applied that requirement to the case at hand to arrive at its judgment, and it is accordingly binding precedent. It follows that in our circuit a proximate cause showing is necessary for restitution awards under § 2259, meaning the losses must be "directly attributable" to the defendant's offense, and "reasonably foreseeable." *Evers*, 669 F.3d at 659. Moreover, every circuit but one to consider this issue has arrived at the same conclusion. *See United States v. Laraneta*, 700 F.3d 983, 989–90 (7th Cir. 2012); *United States v. Burgess,* 684 F.3d 445, 459 (4th Cir. 2012); *United States v. Kearney,* 672 F.3d 81, 95–100 (1st Cir. 2012); *United States v. Aumais*, 656 F.3d 147, 153 (2d Cir. 2011); *United States v. Kennedy*, 643 F.3d 1251, 1261 (9th Cir. 2011); *United States v. Monzel*, 641 F.3d 528, 535 (D.C. Cir. 2011); *United States v. McDaniel*, 631 F.3d 1204, 1209 (11th Cir. 2011); *United States v. Crandon*, 173 F.3d 122, 125 (3d Cir. 1999). The Fifth Circuit is the lone dissenting circuit. *See In re Unknown*, 701 F.3d 749, 762 (5th Cir. 2012) (en banc).

The proximate cause requirement recognized in *Evers* consists of (1) a cause-in-fact requirement—i.e., a showing that the defendant's conduct actually caused the victim's losses—and (2) a requirement that the cause be proximate. This interpretation is supported by the language and purposes of the statute. 18 U.S.C. § 2259(b)(3)(F)

states that the victim's losses include costs incurred for "any other losses suffered by the victim as a proximate result of the offense." The plain meaning of this phrase in context indicates that it is equally applicable to the previous five subsections listing specific costs like medical services and lost income. The "any other losses" catchall is meant to close loopholes. There is no reason that the catchall would be limited by a proximate cause requirement while the specified categories of losses would not. *See Laraneta*, 700 F.3d at 990. The fact that these additional losses are described as "*other* losses suffered. . . as a proximate result" (emphasis added) indicates that just as these losses were proximately caused, so too must those that came before them. The lack of similar phrases in the first five items in the list lends further support to the idea that the final phrase applies equally to all of them. *See Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920).

The D.C. Circuit reasoned in a compelling fashion that cause must be proximate. Noting that § 2259, although a criminal statute, "functions much like a tort statute by directing the court to make a victim whole for losses caused by the responsible party," *Monzel*, 641 F.3d at 535 n.5, the D.C. Circuit reasoned:

> It is a bedrock rule of both tort and criminal law that a defendant is only liable for harms he proximately caused. *See* RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 26 cmt. a (2010) (calling proximate cause a "requirement[ ] for liability in tort"); W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 41, at 263 (5th ed. 1984) ("An essential element of the plaintiff's cause of action for negligence, or . . . any other tort, is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered. This connection usually is dealt with by the courts in terms of what is called 'proximate cause' . . . ."); WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 6.4, at 464 (2d ed. 2003) ("[For] crimes so defined as to require not merely conduct but also a specified result of conduct, the defendant's conduct must be the 'legal' or 'proximate' cause of the result."); *see also id.* § 6.4(c), at 471 ("The problems of [proximate] causation arise in both tort and criminal settings, and the one situation is closely analogous to the other. . . . [T]he courts have generally treated [proximate] causation in criminal law as in tort law . . . ."). The purpose of this rule is clear: "legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified

in imposing liability." KEETON ET AL., *supra,* § 41, at 264. Thus, we will presume that a restitution statute incorporates the traditional requirement of proximate cause unless there is good reason to think Congress intended the requirement not to apply. *See Sherwood Bros. v. District of Columbia,* 113 F.2d 162, 163 (D.C. Cir. 1940) (finding it "reasonable . . . to assume" that where a common law rule "has become embedded in the habits and customs of the community, . . . Congress had the common-law rule in mind when it legislated").

Here, nothing in the text or structure of § 2259 leads us to conclude that Congress intended to negate the ordinary requirement of proximate cause. By defining "victim" as a person harmed "as a result of" the defendant's offense, the statute invokes the standard rule that a defendant is liable only for harms that he proximately caused. That the definition does not include an express requirement of proximate cause makes no difference. "Congress [is] presumed to have legislated against the background of our traditional legal concepts which render [proximate cause] a critical factor, and absence of contrary direction" here "[is] taken as satisfaction [of] widely accepted definitions, not as a departure from them." *United States v. U.S. Gypsum Co.,* 438 U.S. 422, 437 (1978) (quoting *Morissette v. United States,* 342 U.S. 246, 263 (1942)) (internal quotation marks omitted).

*Monzel*, 641 F.3d at 535–36 (alterations in original) (footnotes omitted). The cause-in-fact prong is moreover found independently in the plain language of the statute, as conceded by the amicus. In the definition of "victim," to whom restitution is owed, the statute states that the victim must be "harmed as a result of a commission of a crime under this chapter." 18 U.S.C. § 2259(c). As other circuits have pointed out, "this language implies that the government must establish a causal connection between the defendant's offense and the harm to the victim." *Kennedy*, 643 F.3d at 1260; *see also Monzel*, 641 F.3d at 535–36. *Cf. Pac. Operators Offshore LLP v. Valladolid*, 132 S. Ct. 680, 690 (2012) ("'[A]s the result of . . .' language . . . plainly suggests causation."). The fact that the list of examples of what can form the basis of restitution awards is prefaced by an announcement that these examples are meant to illustrate the term "full amount of the *victim*'s losses" (emphasis added) further links them to this causation requirement. 18 U.S.C. § 2259(b)(3). 18 U.S.C. § 3664, with which restitution awards

under 18 U.S.C. § 2259(b)(2) must be in accordance, also contains references to "the loss sustained by a victim as a result of the offense." 18 U.S.C. § 3664(e).[1]

Understanding 18 U.S.C. § 2259 to include both a cause-in-fact and a proximate-cause requirement does not run counter to the purposes of the statute. Even with these requirements, the statute still allows victims to collect more restitution than under earlier and concurrent restitution statutes. The statute expands the definition of victims and the categories of losses for which victims can receive restitution and makes restitution mandatory. *See Kearney*, 672 F.3d at 92–93. In addition, the list of recoverable losses that the statute provides confirms the breadth of what is a foreseeable consequence of defendants' actions. As the First Circuit points out, "[t]he specified loss categories expanded the usual categories of 'restitutionary' losses. For example, they were not limited to more usual examples of restitution such as payment of the value of a car where the defendant stole the victim's car." *Id.* at 93. The express inclusion of costs like medical expenses and attorneys' fees indicates Congress's understanding that such losses were indeed foreseeable consequences of such crimes. In this way, the statute gives voice to the Supreme Court's recognition that individuals depicted in child pornography can be harmed by the dissemination and viewing of those images. In *New York v. Ferber*, 458 U.S. 747, 759 (1982), the Court stated: "The distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children. . . . [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." In *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249 (2002), the Court added that "each new publication of the [images] would cause new injury to the child's reputation and emotional well-being." Requiring proximate cause to link these injuries to defendants' conduct does not prevent the statute's purpose from being realized.

---

[1] A cause-in-fact requirement does not necessarily mean that defendants of whom Vicky is unaware have not caused her losses, as Crawford argues. Vicky's losses result from the knowledge that her image is being generally circulated, and a district court could find that defendants like Crawford contributed to that knowledge. *See Kearney*, 672 F.3d at 98–99.

For harms to be "proximately" caused by the criminal conduct, they must be "reasonably foreseeable." *Evers*, 669 F.3d at 659. It is very difficult to capture the scope of a "proximate" limitation on cause. Professors and scholars, lawyers and judges have been tilting at that windmill for generations. We can give some scope to the limitation in the context of restitution for child pornography viewing with some examples. Generally if the injury is the type that the statute was intended to prohibit, it is more likely to be proximately caused. Prosser traces this concept back to Baron Pollock, "who expressed the view that the same criterion of foreseeability and risk of harm which determined whether the defendant was negligent in the first instance should determine the extent of the liability for that negligence." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 43, at 281 (5th ed. 1984) (citing *Greenland v. Chaplin*, (1850) 155 Eng. Rep. 104. (Ex.); *Rigby v. Hewitt*, (1850) 155 Eng. Rep. 103 (Ex.)). The line was drawn in the famous *Kinsman* cases, in which Judge Friendly reasoned that there would be liability for failure to exercise due care if the actor's risk was "of the same general sort, from the same forces, and to the same class of persons" as the risks "against whose action [the defendant] was required to guard." *In re Kinsman Transit Co.* (*Kinsman I)*, 338 F.2d 708, 725 (2d Cir. 1964). *Compare Kinsman I*, 338 F.2d at 725–26 (proximate cause found), *with Kinsman Transit Co. v. City of Buffalo (Kinsman II)*, 388 F.2d 821, 825 (2d Cir. 1968) (no proximate cause). While the idea hardly resolves all difficulties in ascertaining whether cause is proximate, Prosser nonetheless states flatly that "[i]t represents the rule which is almost uniformly adopted where the defendant's negligence consists of the violation of an applicable statute." Keeton et al., *supra*.

Thus, for instance, even if a child pornography victim suffers very unusual psychosomatic injuries as a result of knowing that her mistreatment and humiliation are being viewed by others, those injuries are still part of the harm that the laws against child pornography are trying to avoid. But if a child pornography collector's computer, used solely for that purpose, transmits a computer virus that damages another person's computer, that harm is not what Congress was trying to prevent by making the collection of child pornography illegal. Although caused in fact, the harm is not proximately

caused by the criminal violation. A more realistic example, perhaps, would be the loss of child care in *Evers*. *See* 669 F.3d at 660.

The harm endured by the subject of child pornography upon realizing that others are viewing her image is part of what the child pornography prohibitions are designed to deter. *See* S. Rep. No. 104-358, at 14 (1996). Because injury in the form of mental distress is included in the statute, attendant costs, to the extent factually caused by the viewing, are proximately caused. Similarly, attorneys' fees incurred in the reasonable effort to obtain restitution for such harm are proximately caused. *See* 18 U.S.C. § 2254(b)(3)(A)–( E). In contrast, in *Evers* we vacated the section of the restitution award dealing with childcare expenses. Even though child care is specifically listed in § 2259(b)(3) as a cost incurred by the victim, the statute did not apply there because Evers had been providing free babysitting, and it was the loss of his services as a babysitter that led to the childcare expenses. The court held that "[a]bsent additional evidence, the link between the child care costs and Evers' crimes is too attenuated to support the restitution award." 669 F.3d at 660. The loss of a sex offender as a babysitter was not the sort of harm contemplated by the statute's drafters, and so it was more difficult to show proximate cause.

B. *Joint and Several Liability Where Strict Cause-in-Fact Cannot Be Ascertained*

Closely intertwined with the proximate cause issue is the question of whether a defendant should be liable for restitution for *all* of the losses a victim has suffered when, as here, he is but one of hundreds of causes of the injuries, and the contribution of each individual defendant cannot be differentiated. *See Monzel*, 641 F.3d at 538–39. As indicated above, amicus agrees that cause in fact is required for restitution to be awarded, eschewing an argument that would, for instance, include in restitution the attorneys' fees for some entirely unrelated property suit in which the victim was a party. But the question remains whether it is proper to award restitution against one consumer of child pornography for the damages caused by hundreds of such consumers. We could leave that question to the district court on remand because it is primarily one of cause in fact. But for practical purposes it is preferable that we provide guidance in this

regard.  The issue has been extensively briefed and argued, and the issue, albeit distinct, is related to the question of whether the causation is proximate.  Doing so will assist the district courts in their analyses.  *See In re Gen. Motors Corp.,* 3 F.3d 980, 985 (6th Cir. 1993).

The question of joint and several liability is in a sense distinct from that of proximate causation, because if the injuries for which Vicky seeks restitution were caused in fact by the defendants, most of the types of damages she seeks are proximate, as the term is explained in the previous section.  The question of joint and several liability bears some relation to whether the causation is proximate, however, because one of the policy strands in the proximate cause analysis is the avoidance of unlimited liability for a single action.  Even when an action is the cause in fact of damage, like a cow's kicking a lantern causing the Great Chicago Fire, not all of the subsequent devastation was proximately caused by such an action.  Courts have historically limited liability in such situations.  "At bottom, the notion of proximate cause reflects 'ideas of what justice demands, or of what is administratively possible and convenient.'" *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (quoting W. Keeton et al., *supra*, § 41, at 264).  At some point, the myriad additional causes of an injury deprive a minor cause of its proximity.  This was recognized by Justice Andrews's analogy between proximate causation and the tributaries of a stream.  For a while we notice the effects of a brown swamp-water tributary on the color of a river, but by the point at which we reach the mouth of a river it is impossible to say which individual tributaries are the cause of the water's color.  *See Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 352 (1928) (Andrews, J., dissenting).  The waters are "so commingled that all distinction is lost." *Id.*

Crawford and Gamble are part of a group of defendants who have collectively caused the harm for which Vicky seeks restitution.  However, the extent to which each individual defendant has specifically contributed to Vicky's harm is not knowable. The situation is akin to that of a family which lives near three factories emitting toxic fumes and whose members fall ill.  It is not within our current scientific knowledge to

determine which fumes from which factory caused the illness, or if a number contributed. The harm could be divided, caused by a single factory, or caused by them in the aggregate. Here, Vicky has submitted evidence that her knowledge that a *group* of people is viewing her images is causing her additional harm.[2]

In such circumstances, traditional tort principles counsel courts either to award full restitution, or to apportion it. On balance, the latter course is more consistent with the language and purpose of the statute. Each individual defendant is not necessary to cause the aggregate harm—it would have happened without him. As the D.C. Circuit reasoned, "[the defendant's] possession of a single image of [the victim] was neither a necessary nor a sufficient cause of all of her losses. She would have suffered tremendously from her sexual abuse regardless of what [the defendant] did." *Monzel*, 641 F.3d at 538.

The statute provides that defendants should pay "the full amount of the victim's losses." 18 U.S.C. § 2259(b)(1). We have already explained that this language refers to losses that were proximately caused by the defendant's conduct, but the language does not foreclose joint and several liability for those losses proximately caused by a defendant's conduct combined with that of others. If Crawford and Gamble can be shown to have proximately caused Vicky's injuries, then they are also part of the group that as an aggregate brought about the harm. It was the aggregate actions of hundreds of defendants trafficking in child pornography that likely contributed to the severity of a victim's injuries in such cases. In Vicky's case, this likely includes the crippling paranoia that has made her incapable of continuing her studies or maintaining employment that brings her into regular contact with adult men. *See Monzel*, 641 F.3d at 538.

---

[2]There is an argument that there has to be some connection between the number of people in the group viewing Vicky's image and her additional psychological harm. *Cf. Laraneta*, 700 F.3d at 992. Even if so, based on the facts of this case, Vicky's additional psychological harm resulting from her knowledge that a group is viewing her image appears to be indivisible. While there is a clear difference between the harm from one viewer and ten thousand viewers, the question that district courts are faced with is the marginal harm caused by each individual defendant when the group numbers in the hundreds or thousands. Once the group reaches a critical mass, the marginal harm of each additional defendant is effectively indivisible from the harm caused by the rest of the group.

To the extent that we do not have definitive guidance from the statutory language, the statute's purpose and underlying policies guide us.  18 U.S.C. § 2259 is meant to ensure full restitution to the victim, understanding restitution in an expansive way.  The statute is also meant to hold the defendant responsible for the damage he caused, but not for damage he did not cause, as evidenced by the causation requirement.  These purposes when considered together lead to the conclusion that liability is to be apportioned in a reasonable way that leads to full restitution, without eviscerating the causation requirement.

Although placing the primary burden of total compensation on one defendant would give an appealingly simple meaning to the phrase "full restitution" in the statute and place the burden for collection on convicted criminals, it would indefensibly hold defendants responsible for losses they did not cause or only caused in a most attenuated sense, and shift the burden for coordinating contribution from the Government to individual defendants who are not well placed to seek contribution.  Unlike most other examples of joint and several liability, there is no simple way for the defendants to discover who else has been convicted of possession or receipt of Vicky's images.  There are dozens if not hundreds of jurisdictions involved, and no individual defendant has the right to be informed when related cases arise.  The Government, in contrast, has already assembled a database to keep abreast of restitution awards to Vicky all over the country.

Punitive and rehabilitative concerns may also counsel against entire liability in this context.  "The criminal justice system is not operated primarily for the benefit of the victims, but for the benefit of society as a whole." *Kelly v. Robinson*, 479 U.S. 36, 52 (1986).  Although the Court in *Robinson* was deciding the different issue of whether to allow a defendant to discharge her restitution obligations in bankruptcy, part of its reasoning is right on point here:

> [The criminal justice system] is concerned not only with punishing the offender, but also with rehabilitating him.  Although restitution does resemble a judgment "for the benefit of" the victim, the context in which it is imposed undermines that conclusion.  The victim has no control over the amount of restitution awarded or over the decision to award restitution.  Moreover, the decision to impose restitution generally does

> not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant. As the Bankruptcy Judge who decided this case noted in *Pellegrino*: "Unlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose."

*Id.* (quoting *In re Pellegrino*, 42 B.R. 129, 133 (Bankr. D. Conn. 1984)). An apportionment system that spreads the effect of the penal goals of deterrence, retribution, and rehabilitation among the many convicted consumers of child pornography, while leading ultimately to the goal of full compensation for caused injury, fulfills the public purposes of restitution as described by the Supreme Court in *Robinson*.

Amicus argues that a system of apportionment is unworkable, but such a system has been working for the past several years. Millions of dollars in restitution have been awarded to Vicky, and she has begun collecting on the awards. Vicky has already collected almost half of the $1.2 million in losses that she has claimed to date. *See* Resp. of the United States to Amicus Br. in *Gamble*, 15 n.4. On the other hand, defendants seeking contribution would encounter a number of hurdles. For one, Crawford and Gamble were instructed by the court to comply with the special conditions for sex offenders adopted by the Eastern District of Tennessee in Local Rule 83.10(b). Local Rule 83.10(b)(4) states:

> The defendant shall not associate with anyone, under any circumstance, that he/she knows to be a sex offender, someone who engages in sexual activity with children under 18 years of age, or someone who condones and/or supports the sexual abuse/exploitation of children under 18 years of age . . . except while participating in sex offender mental health treatment as approved by the probation officer.

Presumably, this bar on association among sex offenders would include requests for contribution. Even if the local rules were read or modified to allow contact for purposes of contribution actions, this would provide sex offenders with a reason to form networks that our criminal laws generally try to prevent. Further, as the Seventh Circuit recognized, in this context a contribution system would be "extraordinarily clumsy" and

lead to an incalculable number of inmate suits for small amounts of money because convicted defendants paying restitution out of their prison wages would seek contribution from the hundreds of other convicted defendants for each payment made to Vicky.  *See Laraneta*,700 F.3d at 993.

"Statutory construction should generally be informed both by reference to the underlying policies of Congress and by common sense." *Martin v. Local 480*, 946 F.2d 457, 461 (6th Cir. 1991).  Where a defendant is effectively obstructed from seeking contribution on a restitution award, common sense indicates that a statute should not be read to allow joint and several liability when an apportionment system has already been implemented successfully.  It better serves the purposes and policies of the statute to apportion liability.

One fair reconciliation of these issues is to apportion restitution awards using the formula advocated by the Government.  Allocation according to this formula avoids the entire liability that would effectively eviscerate the cause-in-fact and proximate cause requirements of the statute, while providing a realistic and administratively feasible way to provide full restitution to victims for harms that the defendants have contributed to.

As a preliminary matter, it should be clear that allocation will not apply when proximately caused harms are clearly traceable to a particular defendant.  An example would be litigation costs in connection with the particular defendant.

For the harms that must be allocated, the Government proposes a calculation that proceeds in two steps.  The district court first determines the pool of a victim's provable losses that are not traceable to a single defendant using the proximate cause standard described in this opinion, *see supra* Section II.A.  Second, the district court determines how much of the pool a given defendant caused.  This second step provides district courts with considerable discretion.  *See United States v. Boring*, 557 F.3d 707, 713 (6th Cir. 2009) (reviewing the amount of a restitution award for abuse of discretion).  As a logical matter, a defendant generally cannot cause harm prior to the date of his offense.  In a situation involving a victim whose images have been widely disseminated and viewed over the Internet, the court may allocate losses by dividing the pool by the

number of defendants convicted of possessing the victim's image. In a situation such as Vicky's, in which approximately three hundred defendants have been convicted, Resp. of the United States to Amicus Br. in *Gamble*, 15, the number of convicted possessors is a reasonable divisor. It takes into account the fact that many individuals have contributed to Vicky's harms and puts the cost of treating those harms on this culpable and identifiable population. At the same time, it results in a restitution award that is meaningful and takes into account Congress's desire to provide compensation to victims while also assigning some value to the social harm.

Different divisors may be reasonable. Defendants can be expected to argue for a larger pool of culpable parties to spread the damages among. For example, defendants may argue that some estimate can be made of the number of unconvicted possessors of a victim's image, and that because a portion of the harm to Vicky results from the widespread possession of her image, the most relevant pool is made up of all possessors, convicted and unconvicted alike. On top of reliability issues that district courts regularly must confront when dealing with unconfirmed numbers, to effectuate Congress's intent, a district court must ensure that the award of restitution is not nominal.

The Government's apportionment proposal is not necessarily the only way to calculate restitution, and other allocation formulas or procedures may be consistent with the statute. Our conclusion is only that the Government's proposal is facially consistent with the statute. As courts around the country grapple with this difficult issue and find workable solutions, district courts should use methods that fairly implement Congress's goals. With the benefit of experience, it may become apparent that there are fundamental problems with the Government's proposal that make it unworkable. However, at this point in time, the Government's proposal appears to be a pragmatic solution that district courts may use as a framework.

On remand, the district courts may consider their restitution awards *de novo*, consistent with this opinion. We have discretion to issue a general remand or a limited remand, depending on what "may be just under the circumstances." 28 U.S.C. § 2106. Given the heavily factual nature of restitution and our recitation of the applicable

standard, it is most just in these cases to give the district courts the discretion to admit new evidence or argument.

### III.  PRISON SENTENCE

In addition to his restitution argument, Gamble argues that his prison sentence was substantively unreasonable.  On March 17, 2011, the district court sentenced Gamble to eighty-two months of imprisonment—which is within the Guidelines—to be followed by a lifetime of supervised release.  Counsel for Gamble filed a motion under seal for a downward variance from the Guidelines range of seventy-eight to ninety-seven months, arguing that in a previous case, *United States v. McElheney*, 630 F. Supp. 2d 886, 903 (E.D. Tenn. 2009), the court had granted a downward variance in a child pornography case.  Unlike the defendant in that case, who attempted to conceal evidence and continued to seek out child pornography even after being arrested, Gamble cooperated immediately with law enforcement and stopped all involvement with child pornography.  Counsel argued that a downward variance was similarly appropriate in this case given Gamble's good behavior.  The district court denied the variance request at the sentencing hearing.

The district court did not abuse its discretion in imposing the within-Guidelines sentence that it did.  Gamble does not argue that his sentence is arbitrary, that it is based on impermissible factors, or that the district court failed to consider pertinent § 3553(a) factors or gave an unreasonable amount of weight to them, which are the hallmarks of a substantively unreasonable sentence.  *United States v. Reilly*, 662 F.3d 754, 757 (6th Cir. 2011).  Rather, Gamble's entire argument is that his sentence is inconsistent with that offered in a similar case, *McElheney*, and that the district court misread some of the aggravating factors in Gamble's presentence report.  Gamble's argument misinterprets the statute.  Section 3553(a)(6) requires sentencing courts to consider "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  We have made clear that this factor concerns national disparities, not specific individual cases.  *See United States v. Wallace*, 597 F.3d 794,

803 (6th Cir. 2010).  The fact that Gamble can point to a case with a different outcome does not render his own sentence unreasonable.

Even if the standard had allowed for the individual comparison that Gamble suggests, the district court did not abuse its discretion.  The record reflects that the district court considered Gamble's argument and rejected it because of differences it perceived between Gamble's case and McElheney's.  The court explained that the main difference between Gamble and McElheney was the support system each had. McElheney had a wife, parents, a sister, and children that provided "close family support," leading the district court to see "a defendant with webs of family ties and family support that could assist in ensuring that the risk of him reoffending would be very, very low."  Sentencing Hr'g Tr. 46, Mar. 17, 2011.  Gamble, on the other hand, had a family living some distance away, had never been married nor "had a substantial relationship with another person," and his social activities, according to the court, were "solitary activities that . . . indicate a lack of strong social support from others."  *Id.* at 46–47.  The district court read the physician's report to indicate that Gamble's interest in child pornography was very deep-seated and would take a long time to treat.  All of this led the court to find Gamble's report more troubling than McElheney's.  The district court stated that its "most important consideration here is protection of the public," including demonstrating to the public that activity such as Gamble's would not be tolerated.  *Id.* at 48.  The district court looked to the factors from 18 U.S.C. § 3553(a) and found that a below-Guidelines sentence was not justified and denied the request for a variance.  Although other judges looking at the same facts may have found otherwise, the district court's conclusions here were not unreasonable and not an abuse of discretion.

## IV. CONCLUSION

We remand the restitution orders in Gamble's and Crawford's cases for proceedings consistent with this opinion.  Gamble's sentence is otherwise affirmed.

---

**CONCURRING IN PART AND IN THE JUDGMENT**

---

KETHLEDGE, Circuit Judge, concurring in part and concurring in the judgment. I join all but part II.B of the Court's thoughtful opinion. I do not join that part because I would direct the district court to make a more flexible and open-ended determination of each defendant's share of responsibility for Vicky's losses.

I agree with the majority that the restitution statute (18 U.S.C. § 2259) requires proof of both actual and proximate causation. As to actual causation, I agree that a defendant cannot cause losses that precede his conduct. But otherwise I think an inquiry into whether a particular defendant actually caused a victim's generalized losses—by which I mean losses resulting from the actions of many violators of the child-pornography laws—is an inquiry into the unknowable. Casting legal questions in such terms is only a hindrance to clear thinking; and thus the choice before us is either to abandon enforcement of the statute in these cases, or to adopt a different rule of actual causation for this context. I would take the latter approach and adopt the First Circuit's rule of aggregate causation (though only for purposes of determining actual cause). *See United States v. Kearney*, 672 F.3d 81, 98 (1st Cir. 2012). And where that test is met, as it is here, I would simply move on to the issue of proximate causation.

Proximate cause is a flexible concept grounded in policy considerations. Congress's inclusion of a proximate-cause requirement in § 2259 allows—indeed requires—us to apply a rule that makes practical sense in light of the statute's text and structure as a whole. The statute's directive that the defendant pay "the full amount of the victim's losses[,]" § 2259(b)(1), shows that the restitution order should aim to make the victim whole with respect to her losses proximately caused by the defendant. At the same time, however, nothing in the statute appears to support multiple full recoveries for the victim. And multiple recoveries would be compelled under an approach where multiple defendants are each found to cause all of the victim's losses, since under § 2259(b)(4)(B)(ii) a district court "may not decline to issue an order under this section

because of the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source." Moreover, I agree with the Court that a joint-and-several approach is impracticable in this context.

So I agree that some kind of apportionment approach is in order. The district court must assign to the defendant some percentage of responsibility for the victim's generalized losses. How to determine that percentage is the nub of these cases. Again, I would not cast the issue in terms of unknowable questions about actual cause. Equally unknowable is the extent to which the victim's generalized losses are "directly attributable" (a traditional measure of proximate cause) to a particular defendant. Nor is the measure of "reasonable foreseeability" much of a limitation here—for every adult who watches videos of young girls being raped should reasonably foresee that he is inflicting great harm upon those victims. *See United States v. Bistline*, 665 F.3d 758, 766 (6th Cir. 2012).

But neither would I adopt the government's rigid approach of giving each criminal actor the same share of responsibility for the victim's losses. Specifically, as I understand that approach, the district court would calculate the total amount of the victim's losses, then determine the number of criminal actors who caused those losses, and then give each of those actors (including the defendant) an equal share of responsibility for them. Thus, if the victim's losses total $1 million, and an estimated 1,000 violators of the child-pornography laws contributed to those losses, then each violator would be responsible for $1,000. This approach is more arbitrary than it needs to be: although the exact percentage of a defendant's responsibility for the victim's losses is unknowable, the district courts can do better than this in making distinctions among the relevant actors.

To that end, I would cast the issue in terms of the defendant's comparative moral fault. Proximate cause is a concept flexible enough for us to put the inquiry in these terms. *See* Dan B. Dobbs et al., *The Law of Torts* § 185, p. 622 (2d ed. 2011) ("Scope of liability, formerly termed proximate cause, is not about causation at all but about the significance of the defendant's conduct or the appropriate scope of liability in light of

moral and policy judgments about the very particular facts of the case"). Specifically, I would ask: what is the defendant's culpability relative to the various other actors who contributed to the victim's harm? This determination would resemble the comparative-fault determinations that juries make every day in civil cases. The inquiry would be flexible, taking into account the likely number of criminal defendants, past and future, who contributed to the victim's harm; whether the defendant produced or distributed images of the victim; how many images the defendant possessed; and any other fact relevant to measuring the defendant's culpability relative to the other relevant actors. (I would limit the "relevant actors" to the anticipated number of criminal defendants who contributed to the victim's harm, rather than to the estimated number of people in the world who did so; for using the former number retains the theoretical possibility that the various restitution awards will eventually make the victim whole.) The district court could direct the probation officer to prepare a report on all these points, and then hear testimony at an evidentiary hearing. *See* 18 U.S.C. § 3664(a), (d)(4). After considering all the proofs, the court would make a reasonable estimate of the defendant's share of moral fault for the victim's generalized losses. That share of the victim's losses would then be the amount he proximately caused.

I see no reason for the district courts not to take these additional evidentiary steps before determining the amount of a restitution award. The text of § 3664 instead makes clear that Congress thought the courts should take them. Admittedly, even after those steps, the determination that follows will only be an estimate. But the estimate would be more informed and less arbitrary than a *pro rata* share would be.

In determining the amount of a restitution award under § 2259, the courts can only do their best. It seems to me that a more flexible inquiry, focused on moral fault, and using all the evidentiary tools at the court's disposal, is the way to accomplish that end.