NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0234n.06

No. 14-1653

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | May 02, 2016 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| SEAN JASON BARRY, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:    MERRITT, SUHRHEINRICH, and DONALD, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Defendant-Appellant Sean Barry ("Barry") pled guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). As part of his sentence, Barry was ordered to pay $50,540 in restitution to a former child depicted in three of the pornographic images found in his possession. Barry appeals the restitution order on the ground that his attorney provided ineffective assistance of counsel at the restitution hearing. For the following reasons, we AFFIRM.

**I.**

Pursuant to a plea agreement with the government, Barry pled guilty to one count of possession of child pornography. According to the indictment, the offense occurred on or about

July 1, 2013. As part of the plea agreement, Barry waived his right to appeal or collaterally attack his sentence. Barry, however, retained the right to appeal a sentence that exceeds the statutory maximum or is based upon an unconstitutional factor, such as race, religion, national origin, or gender. The appeal waiver also preserved Barry's right to challenge the validity of the waiver in a collateral proceeding.

Prior to sentencing, the government submitted a sentencing memorandum in support of a restitution request by a victim known as "J_blonde." J_blonde was depicted in three of the images found in Barry's child pornography collection. J_blonde's restitution request includes a psychology report and an economic evaluation. The psychology report concludes that J_blonde suffers from post-traumatic stress disorder and depression. According to the report, the effects of J_blonde's childhood abuse are exacerbated by his knowledge that the abuse is "viewed by myriad persons for their sexual gratification and excitement." The economic report calculates J_blonde's damages as a result of the circulation of his images and organizes these damages into three categories: loss of employment wages and benefits, cost of future therapy, and reduction in the value of life. The report estimates the loss of employment wages and benefits at $286,249 (2010-2052); the cost of therapy at $89,295 (2013-2023); and the reduction in the value of life at a range of $1,576,405 to $2,364,567 (2010-2063).

J_blonde's representative submitted a request for $1,576,405, at the low end of the reduction in the value of life, and excluding the amounts estimated for loss of wages and the cost of therapy. The government recommended that the district court award approximately $42,605 in restitution from Barry to J_blonde. The government reached this number by dividing J_blonde's total requested damages by 37—the number of defendants, including Barry, that have been convicted of possessing, receiving, or distributing J_blonde's images. The government

provided the court with a list of the restitution awards ordered from the other 36 defendants, which showed that the previous awards ranged from $250 to $28,000. Barry also submitted a sentencing memorandum, asking the court to decline to impose restitution, or, in the alternative, to award substantially less than the $1,576,405 figure requested by J_blonde.

The district court reserved decision on the restitution issue pending the Supreme Court's opinion in *Paroline v. United States*, 134 S. Ct. 1710 (2014), which was expected to address how courts should calculate restitution awards in child pornography cases where a victim's images have been viewed by hundreds or thousands of anonymous possessors. Following issuance of the *Paroline* opinion, both the government and Barry submitted supplemental briefing addressing the outcome, rationale, and effect of that decision.

Leading up to the restitution hearing, Barry was represented by Assistant Federal Public Defender David Kaczor, who filed the briefs addressing restitution. Because Kaczor was ill on the day of the hearing, Federal Public Defender Ray Kent represented Barry in Kaczor's stead at the restitution hearing.

At the hearing, the government explained the court's obligation to apportion J_blonde's losses according to Barry's contribution to J_blonde's harm. The government stated:

> [I]n this case, the restitution should be less than someone who may have produced or distributed the images, as here Mr. Barry only possessed them. Restitution for Mr. Barry should probably be less than someone who produced a great deal more images of J_blonde . . . Mr. Barry had three of them. Mr. Barry also did not seek to contact the victim. . . . So all of those weigh in favor of a lower apportionment amount for Mr. Barry.

At the conclusion of the government's argument, Barry's attorney, Kent, argued for "a minimal award," emphasizing that Barry "possessed only three images" and that "it's safe to assume that thousands of people have viewed those images." Kent concluded that "in addition to

the other factors which [government counsel] lays out, a minimal award would be sufficient here to meet the statutory purposes."

The district court ordered Barry to pay $50,540 in restitution to J_blonde. The court reached this amount by applying the formula approved in *United States v. Gamble*, 709 F.3d 541, 552-55 (6th Cir. 2013). That formula directs the court to determine the total amount of a victim's provable losses and then divide the total losses by the number of defendants convicted of possessing the victim's image. *Id.* at 554. The district court began with a figure of $1.5 million, noting that this number was rounded down from J_blonde's request of $1,576,405 and did not include lost wages or the costs of future counseling, both of which the court found "highly likely to occur." The court further acknowledged that J_blonde's loss calculation dated back to 2010 and concluded that Barry could not be liable for losses accruing prior to his offense on July 1, 2013. The court then divided $1.5 million by the number of defendants, including Barry, who were ordered to pay restitution to J_blonde, resulting in a figure of $40,540. While recognizing that "this number is considerably higher than the average amount of restitution ordered in the 36 earlier cases," the district court found the resulting amount appropriate under both *Paroline* and *Gamble*. *Id.* The court then added "$10,000 of punitive restitution" to the award "pursuant to the Paroline case." *Id.* Earlier in the hearing, the court had observed that *Paroline* described restitution as serving "remedial or compensatory purposes, as well as punitive purposes." According to the district court, this additional $10,000 would "remind[] Mr. Barry that his conduct produces concrete and devastating harms for real, identifiable victims." Barry's attorney did not object to the restitution award.

Barry appeals the restitution award on the grounds that his attorney rendered ineffective assistance of counsel at the restitution hearing. The district court had jurisdiction over this matter under 18 U.S.C. § 3231. We have jurisdiction over this appeal under 28 U.S.C. § 1291.

**II.**

Barry argues that his counsel's performance at the restitution hearing was constitutionally defective because his attorney failed to object to and argue against the restitution award. Specifically, Barry asserts that his attorney should have raised the following arguments in opposition to the restitution award: (1) Barry could not be held responsible for damages that occurred prior to his offense in July 2013, (2) Barry's restitution award should not have been substantially higher than the 36 previous defendants' awards and should have been lower than awards imposed on defendants who distributed J_blonde's images, and (3) Barry should not have been ordered to pay an additional $10,000 in "punitive restitution" because restitution is already both remedial and punitive. Barry claims that these failures resulted in a higher award than the district court would otherwise have ordered and prevented preservation of the arguments for appeal on an error basis.

**A.**

Before reaching Barry's ineffective assistance of counsel claim, we must address the government's curious approach to Barry's appeal waiver. On the one hand, the government expressly declines to seek enforcement of Barry's appeal waiver on his present ineffective assistance claim, an appeal that would otherwise be barred by the terms of his plea agreement. At the same time, the government argues that Barry was not prejudiced by his counsel's failure to preserve issues for appeal because the appeal waiver prevents him from appealing the restitution award. Appellee Br. 18-19 & n.1.

Appeal waivers are not jurisdictional. *United States v. Hampton*, 732 F.3d 687, 690 (6th Cir. 2013); *United States v. Caruthers*, 458 F.3d 459, 472 n.6 (6th Cir. 2006). Therefore, an appeal waiver does not deprive us of jurisdiction to consider a challenge to a sentence on the merits. *See Jones v. United States*, 689 F.3d 621, 624 n.1 (6th Cir. 2012). The government may forfeit its right to assert an appeal waiver by failing to raise it in a timely fashion, *United States v. Ford*, 761 F.3d 641, 661 n. 15 (6th Cir. 2014), or by explicitly declining to assert the waiver, *Jones*, 689 F.3d at 624 n.1. The government may also partially invoke an appeal waiver. *United States v. Ortega-Hernandez*, 804 F.3d 447, 451 (D.C. Cir. 2015) (citing *United States v. Story*, 439 F.3d 226, 231 (5th Cir. 2006)).

Although the government has not expressly said so, it appears to be partially invoking Barry's appeal waiver. While the government explicitly waived its right to enforce Barry's appeal waiver for his present appeal, it maintains that the appeal waiver eliminates any prejudice to Barry from his counsel's failure to preserve arguments challenging the restitution order for purposes of appeal. Rather than enforce Barry's appeal waiver in full and dismiss this claim, or pretend as if no appeal waiver exists, we will treat Barry's appeal waiver as having preserved the right to appeal his sentence based on ineffective assistance of counsel.[1] Therefore, despite the government's waiver of the appeal waiver on Barry's present ineffective assistance claim, Barry's appeal waiver still effectively prevents him from challenging the restitution order on other grounds before an appellate court (except in the narrow circumstances outlined in the plea agreement).

---

[1] For an example of an appeal waiver retaining the right to appeal based on ineffective assistance of counsel, see *United States v. Ferguson*, 669 F.3d 756, 760 (6th Cir. 2012).

**B.**

Barry's ineffective assistance claim can be divided into four discrete challenges to his attorney's performance at the restitution hearing: (1) the failure to argue that three years of J_blonde's calculated loss could not be attributed to Barry because they occurred before Barry's offense; (2) the failure to raise the issue of comparative fault—that is, to argue that Barry's restitution award should not be higher than previous defendants' awards and should be lower than defendants who distributed or possessed a greater number of J_blonde's images; (3) the failure to argue that the additional $10,000 for punitive restitution was improper; and (4) the failure to preserve these arguments for appeal on an error basis.

To demonstrate that his counsel's performance was constitutionally deficient, Barry must show both that: (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's errors had an actual, adverse effect on the defense. *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984). In analyzing the first prong, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. As for the prejudice prong, Barry must show a "reasonable probability" that, had counsel performed adequately, a different outcome would have resulted. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court may decide an ineffective assistance claim solely on the ground of lack of sufficient prejudice without examining whether counsel's performance was deficient. *Id.* at 697.

Generally, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal. *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005). The rationale is that "there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *Id.* (quoting *United States v. Wunder*, 919 F.2d 34, 37

(6th Cir. 1990)). Instead of entertaining these claims on direct appeal, "our court has routinely concluded that such claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255." *United States v. Brown*, 332 F.3d 363, 369 (6th Cir. 2003) (quoting *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997)). That being said, there is an exception to the general rule against direct review where "the record is adequate to assess the merits of the defendant's allegations." *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990). This exception often applies where the record shows that counsel's allegedly unreasonable acts or omissions caused no prejudice to the defendant's case. *See, e.g.*, *United States v. Soto*, 794 F.3d 635, 646-47 (6th Cir. 2015) (rejecting an ineffective assistance claim on direct appeal because damaging evidence that the attorney failed to move to suppress would have been admitted over counsel's objection); *United States v. Abdullah*, 162 F.3d 897, 905 (6th Cir. 1998) (rejecting an ineffective assistance claim on direct appeal where the attorney failed to file an adequate notice of alibi, but the district court allowed the presentation of defendant's alibi witnesses without restriction).

We find the record sufficiently developed to address most, but not all, of Barry's challenges to his attorney's performance. Three of Barry's challenges clearly lack merit because the attorney's allegedly unreasonable actions did not cause Barry prejudice. The record, however, is inadequate to assess the charge that counsel's failure to object to the additional $10,000 in punitive restitution fell below an objective standard of reasonableness and resulted in a higher restitution award than the district court would otherwise have ordered. This challenge cannot be resolved solely on prejudice grounds. Unlike the other arguments Barry contends his attorney should have raised at the restitution hearing, the additional $10,000 in punitive restitution was not an issue anticipated by the parties in their briefs or in oral argument.

Moreover, awarding an additional, arbitrary amount in "punitive restitution" unlinked to the defendant's relative causal role in the victim's losses is not clearly authorized by *Paroline*. Rather, *Paroline* instructs district courts to "order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses," without differentiating between restitution's compensatory and punitive goals. 134 S. Ct. at 1727. In this case, it appears the district court awarded an extra $10,000 without connecting it to the defendant's "causal significance" in producing that $10,000 loss. *Id.* at 1728. Thus, based on the limited record on appeal, there appears to be a reasonable likelihood that bringing this issue to the district court's attention would have changed the outcome.

But while the record may allow for a showing of prejudice, it is not sufficiently developed to resolve whether Barry's counsel's performance fell within "the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The record does not contain any information explaining counsel's decision not to object to the additional $10,000 in restitution. *Cf. United States v. Woodruff*, 735 F.3d 445, 452 (6th Cir. 2013) (declining to address an ineffective assistance of counsel claim on direct appeal because "there is no affidavit or testimony from [defendant's] trial counsel explaining his decision not to raise an objection"); *United States v. Sanders*, 404 F.3d 980, 986 (6th Cir. 2005) (declining to address an ineffective assistance claim on direct appeal because "the present record contains no evidence whatsoever concerning [defendant's] trial counsel's reasons for not calling an expert witness"). Because we are unable to determine from the record whether counsel's silence was based on reasonable professional judgment, we decline to address this portion of Barry's ineffective assistance claim.[2]

---

[2] Ordinarily, Barry could pursue this claim by way of a collateral proceeding under 28 U.S.C. § 2255. But it appears that Barry's appeal waiver precludes collateral challenges to his sentence unless the challenge goes to the validity of the waiver itself. Of course, the government may choose to waive the appeal waiver's bar to a collateral proceeding as it has done with Barry's direct appeal here.

We now address the challenges capable of being resolved on the present record. Two of the arguments that Barry claims his attorney should have raised and would likely have persuaded the district court to order a lower amount—the lack of causation for the three years of losses preceding Barry's offense, and comparative fault—were, in fact, presented to the court by counsel for both the government and the defense. Both parties developed these points in the written briefs.[3] Moreover, both parties repeated the arguments regarding comparative fault at the restitution hearing. Furthermore, the district court expressly acknowledged both the causation and comparative fault arguments in calculating restitution. The district court recognized that "[t]he [date of the] offense of conviction here is July 1st, 2013. . . . Accordingly, Barry can't be held liable for J_blonde's loses [sic] prior to that date." Although the court did not expressly exclude the three years of loss preceding Barry's 2013 offense, which amounted to $114,403, the court noted that the $1.5 million figure was already rounded down from J_blonde's request and did not include the sizable amounts that had been initially included for lost wages and therapy. After announcing the $40,540 figure, the district court also recognized that "this number is considerably higher than the average amount of restitution ordered in the 36 earlier cases."[4] The court found, however, that "given the guidance in Paroline, which I think firmly establishes the Gamble case as good law for purposes of evaluating restitution to victims, . . . that figure is an

---

[3] *See* Govt's Sentencing Mem., R.29 at 10 (informing the court of the option to reduce the restitution amount to account for losses that preceded Barry's offense); Def.'s Sentencing Mem., R. 30 at 8 (arguing that Barry cannot be responsible for losses occurring before his offense); Def.'s Supplemental Mem., R. 38 at 6-7 (same); Govt's Sentencing Mem., R. 29 at 14 (addressing factors that lessened Barry's degree of comparative fault); Def.'s Sentencing Mem., R. 30 at 5, 8 (emphasizing that Barry possessed only three of J_blonde's images and did not distribute them); Govt's Supplemental Br., R. 37 at 4-5 (outlining factors for analyzing comparative fault); Def.'s Supplemental Mem. R. 38 at 5 (same).

[4] Barry suggests that his attorney should have presented more information about the previous 36 defendants ordered to pay restitution to J_blonde—specifically, their offenses of conviction. Then, Barry argues, the court could have more precisely compared Barry's conduct of possessing three images to the other defendants' conduct. As the government points out, however, most of these defendants were convicted of more than one offense, making it impossible to determine whether they paid restitution for possessing or distributing images of J_blonde. Moreover, the offense of conviction does not indicate how many of J_blonde's images were possessed or distributed.

appropriate figure to order for compensatory restitution." *Id.* Therefore, the arguments Barry faults his attorney for failing to raise at the restitution hearing were advanced by both parties and duly considered by the district court in formulating restitution. Repeating these arguments would have been cumulative of the positions already asserted by both parties and would have rehashed issues already addressed in the district court's order. There is not a reasonable probability that repeating these arguments would have changed the restitution award. As a result, Barry cannot establish the prejudice required for his ineffective assistance claims based on counsel's supposed failure to make these causation and comparative fault arguments.

As for the failure to make arguments for purposes of preserving them for appeal, this failure did not prejudice Barry because he had already signed an appeal waiver. We noted above that Barry's appeal waiver remains effective despite the government's limited waiver of Barry's appeal in this case. As a result, Barry was not prejudiced by his attorney's failure to preserve objections to the restitution order for appellate review. Even if Barry's counsel had made such objections, the appeal waiver would bar an appellate court from reviewing the restitution order on the grounds that Barry advances here. Thus, Barry cannot establish ineffective assistance based on his attorney's failure to preserve arguments for appeal.

**III.**

For these reasons, we do not address Barry's ineffective assistance of counsel claim as it relates to counsel's failure to oppose the additional $10,000 in "punitive restitution," and we AFFIRM the district court's restitution order in all other respects.